**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number: 2012-NMSC-001

Filing Date: December 5, 2011

Docket No. 31,100

TIMOTHY C. ALLEN,

      Petitioner,

v.

TIM LEMASTER, Warden, and
STATE OF NEW MEXICO,

      Respondents.

**ORIGINAL PROCEEDING ON CERTIORARI**
Thomas J. Hynes, District Judge

Melissa Hill
Corrales, NM

for Petitioner

Gary K. King, Attorney General
M. Victoria Wilson, Assistant Attorney General
Santa Fe, NM

for Respondents

**OPINION**

**DANIELS, Chief Justice.**

**{1}** Timothy Allen appeals the district court's dismissal with prejudice of his petition for writ of habeas corpus alleging ineffective assistance of counsel in connection with his death sentence. The district court did not consider the merits of Allen's claims but instead dismissed the petition as a sanction for his refusal to answer court-ordered deposition questions, which Allen claimed violated his privilege against self-incrimination and attorney-client privilege. We hold that deposing Allen was improper under Rule 5-503 NMRA, which prohibits the State from compelling witness statements from criminal

1

defendants. We also hold that communications relevant to Allen's claims of ineffective assistance of counsel are excepted from the attorney-client privilege under evidence Rule 11-503(D)(3) NMRA and may be inquired into with his counsel and other witnesses in the habeas proceedings. We reverse the dismissal of Allen's petition for habeas corpus and remand to the district court to determine the merits of his two ineffective assistance of counsel claims.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{2} Allen was convicted and sentenced to death for the 1994 kidnapping, sexual assault, and murder of a seventeen-year-old victim. *See State v. Allen*, 2000-NMSC-002, ¶¶ 1-2, 128 N.M. 482, 994 P.2d 728. This Court affirmed his convictions and sentences on direct appeal. *Id.* ¶ 1.

{3} On March 20, 2002, Allen filed a petition for writ of habeas corpus that raised thirteen claims, supported by exhibits and affidavits. The district court ordered an evidentiary hearing on the two claims that alleged ineffective assistance of counsel and dismissed the petition's other eleven claims without an evidentiary hearing. Allen's ineffectiveness claims allege that his trial attorneys failed to conduct an adequate pretrial investigation of his social and mental health history and, as a result, failed to present evidence at either the guilt or penalty phase of trial that Allen had been abused as a child and currently suffered from severe neuropsychological deficits and psychiatric disorders.

{4} Discovery in preparation for an evidentiary hearing on Allen's ineffectiveness claims included (1) taking witness statements from the three attorneys who represented him at trial; (2) obtaining photocopies of his Public Defender Department file, medical and mental health files, and Department of Corrections records; (3) deposing twenty personal history witnesses who had provided affidavits in support of his petition for writ of habeas corpus; (4) deposing the psychologist who had evaluated his sanity in preparation for trial; and (5) obtaining a court-ordered psychiatric evaluation of him during which he answered all questions without limitation.

{5} The State also deposed Allen personally on two separate occasions. Despite Allen's requests for protective orders, the district court ruled that he was subject to deposition on all issues related to the habeas corpus proceedings on the theory that he waived his constitutional privilege against self-incrimination and his attorney-client privilege by filing a petition for writ of habeas corpus that raised ineffective assistance of counsel claims.

{6} At Allen's first deposition, he invoked his privilege against self-incrimination and refused to answer any questions. The district court ordered him to answer all questions relating to his communications with his trial attorneys. Allen then answered over three hundred questions addressing his communications with and observations of his trial attorneys and probing his knowledge of the attorneys' tactical and strategic decisions before and during trial. He refused to answer other questions in reliance on the self-incrimination

clauses of the Fifth Amendment to the United States Constitution and Article II, Section 15 of the New Mexico Constitution.

**{7}** The State then moved the district court to dismiss Allen's habeas corpus petition with prejudice as a sanction for his refusal to answer all deposition questions. The district court ordered that he be deposed again to give him "one last opportunity to answer the specific questions ordered by the Court to be answered." The court also ordered the State to present all proposed deposition questions "verbatim" so that Allen could respond with any specific objections. The State proposed twenty-eight new questions in addition to the eighty-eight questions that Allen had previously refused to answer. He objected to each of those questions on multiple grounds.

**{8}** The district court held a hearing on the proposed deposition questions and ordered Allen to answer specified questions. He refused to answer many of the court-approved questions. In response, the district court issued an order dismissing his petition for writ of habeas corpus with prejudice in its entirety, stating that "Defendant is in contempt of Court for failing to answer questions in his deposition as directed."

**{9}** Allen filed a petition for writ of certiorari in this Court raising twenty-three issues. We granted certiorari and requested briefing on four issues: (1) whether the district court erred by finding that Allen waived his state and federal privileges against self-incrimination by filing a petition for writ of habeas corpus; (2) whether the deposition questions exceeded the scope of his waiver of the attorney-client privilege; (3) whether his depositions were ordered in violation of Rule 5-503 that prohibits the State from compelling statements from criminal defendants; and (4) whether dismissal of his ineffective assistance of counsel claims was an excessive and unconstitutional sanction for contempt of court.

**{10}** We hold that Rule 5-503 of the Rules of Criminal Procedure for the District Courts precludes taking a compelled statement or deposition of a criminal defendant, including one who is in the postconviction habeas corpus phase of a criminal proceeding. We also hold that communications specifically relevant to Allen's ineffective assistance of counsel claims are "relevant to an issue of breach of duty by the lawyer to the lawyer's client" and are therefore not protected under the attorney-client privilege by the explicit terms of Rule 11-503(D)(3). Because our application of established procedural and evidentiary rules requires reversal of the district court's dismissal of Allen's habeas corpus claims, we need not address any further issues in this certiorari proceeding.

## II.    DISCUSSION

### A.    Standard of Review

**{11}** This case requires us to interpret and apply the New Mexico Rules of Criminal Procedure and Rules of Evidence. The proper interpretation of our Rules of Criminal Procedure is a question of law that we review de novo. *See State v. Lohberger*,

2008-NMSC-033, ¶ 18, 144 N.M. 297, 187 P.3d 162. We likewise review de novo both "the trial court's construction of the law of privileges," *Estate of Romero ex rel. Romero v. City of Santa Fe*, 2006-NMSC-028, ¶ 6, 139 N.M. 671, 137 P.3d 611, and "[t]he question of whether a party has waived the attorney-client privilege," *Gingrich v. Sandia Corp.*, 2007-NMCA-101, ¶ 12, 142 N.M. 359, 165 P.3d 1135. When construing our procedural rules, we use the same rules of construction applicable to the interpretation of statutes. *See Walker v. Walton*, 2003-NMSC-014, ¶ 8, 133 N.M. 766, 70 P.3d 756. "We first look to the language of the rule." *In re Michael L.*, 2002-NMCA-076, ¶ 9, 132 N.M. 479, 50 P.3d 574. "If the rule is unambiguous, we give effect to its language and refrain from further interpretation." *Id.* (citation omitted). We also seek guidance from the rule's language, history, and background. *See Roark v. Farmers Group, Inc.*, 2007-NMCA-074, ¶ 50, 142 N.M. 59, 162 P.3d 896.

**B.** **Rule 5-503 Precludes Compelling a Statement from a Defendant in a Criminal Proceeding, Which Includes Habeas Corpus Review Under Rule 5-802 NMRA**

**{12}** In order to understand the issues of this case, it is helpful to review the origins and development of the writ of habeas corpus that has become an integral phase of modern criminal proceedings, including those in New Mexico. Habeas corpus procedures have been used over the centuries in England and the United States to bring a person before a court for various purposes. *See In re Forest*, 45 N.M. 204, 208, 113 P.2d 582 584 (1941) ("The right [to a habeas corpus proceeding] antedated the Magna Carta."); Charles Alan Wright, *Law of Federal Courts* § 53 at 350-52 (5th ed. 1994); Eric M. Freedman, *Habeas Corpus: Rethinking the Great Writ of Liberty* 1 (2001); William F. Duker, *A Constitutional History of Habeas Corpus* 7 (1980). The most significant form, historically called habeas corpus ad subjiciendum, is to test the lawfulness of a prisoner's conviction and confinement; and this form has earned recognition in the law as the "Great Writ." David L. Shapiro, *Habeas Corpus, Suspension, and Detention: Another View*, 82 Notre Dame L. Rev. 59, 59 n.2, 66-67 (2006); Lyn S. Entzeroth, *Struggling for Federal Judicial Review of Successive Claims of Innocence: A Study of How Federal Courts Wrestled With the AEDPA to Provide Individuals Convicted of Non-Existent Crimes With Habeas Corpus Review*, 60 U. Miami L. Rev. 75, 78 (2005).

**{13}** Historically, common-law writs of habeas corpus had been civil in form. In 1965 this Court adopted a new procedural rule governing postconviction relief, Rule 93, in our Rules of Civil Procedure. *See* NMSA 1953, § 21-1-1(93) (Vol. 4, 1969 Pocket Supp.). Under Rule 93, a prisoner could "[move] the court that imposed his or her sentence to 'vacate, set aside or correct the sentence'" under certain circumstances, and "a prisoner applying for a writ of habeas corpus first had to exhaust his or her remedies under [Rule 93] before seeking the writ." *Cummings v. State*, 2007-NMSC-048, ¶¶ 11-12, 142 N.M. 656, 168 P.3d 1080. Following the adoption of Rule 93, this Court held in a number of cases that postconviction proceedings under Rule 93 were civil in nature and therefore governed by our Rules of Civil Procedure. *See, e.g.*, *State v. Gilbert*, 78 N.M. 437, 439, 432 P.2d 402, 404 (1967) ("Proceedings under Rule 93 . . . are governed by the Rules of Civil Procedure."); *State v.*

4

*Weddle*, 77 N.M. 420, 423, 423 P.2d 611, 614 (1967) ("[A]ctions under Rule 93 should be considered to be civil."), *superseded by rule change* as recognized in *Caristo v. Sullivan*, 112 N.M. 623, 628, 818 P.2d 401, 406 (1991).

**{14}** In 1972, this Court adopted comprehensive Rules of Criminal Procedure for the District Courts. *See* Rule 5-101 NMRA Compiler's Notes. In the order adopting those rules, this Court "provided in part that any rules of civil procedure governing criminal proceedings are hereby repealed." *Id.* (internal quotation marks omitted). The scope rule specifically provided that these criminal rules "govern the procedure in the district courts of New Mexico in *all criminal proceedings*." Rule 5-101(A) (emphasis added). This Court then adopted specific provisions, at that time codified in criminal rule 57, to govern postconviction motions in criminal cases and classified them within our newly created Rules of Criminal Procedure, thereby superseding Rule 93 for all motions for postconviction relief filed on or after September 1, 1975. *See* NMSA 1953, § 41-23-57 (Vol. 6, 2d Repl., 1975 Pocket Supp.).

**{15}** The placement of habeas corpus regulation within our Rules of Criminal Procedure demonstrated this Court's recognition that postconviction motions challenging a conviction or sentence in a criminal case are in reality part of a criminal proceeding. As this Court explained in *Caristo*, 112 N.M. at 628-29, 818 P.2d at 406-07,

> [t]he committee commentary to Rule 57 expressed the position that the rule was intended to incorporate the federal view of post-conviction motions under 28 U.S.C. § 2255 (1988)—that such proceedings are a further step in the movant's *criminal* case and not a separate civil action. Thus, the committee stated that Rule 57 "supersedes cases holding that the post-conviction remedy is a separate civil action."
>
> We agree with the committee that post-conviction habeas petitions are not appropriately characterized as civil actions.

(Footnote and citation omitted.)

**{16}** Over twenty-five years ago, we replaced Rule 57 with Rule 5-802, entitled "Habeas corpus," which has been applicable to habeas corpus petitions since March 1, 1986. Rule 5-802 & Compiler's Notes; *see also Caristo*, 112 N.M. at 629, 818 P.2d at 407. Our adoption of Rule 5-802 was "part of a re-codification of our rules" and "did away with the general concept of a 'post-conviction remedy'" by creating a single rule governing "the procedure for a habeas petitioner to exercise his or her long-established constitutional right to petition this Court" for habeas corpus review of the lawfulness of the petitioner's criminal conviction. *Cummings*, 2007-NMSC-048, ¶ 18. Rule 5-802 eliminated much of the postconviction motion practice previously conducted under Rules 93 and 57 and became the primary means for a prisoner to seek postconviction relief in New Mexico. *Cummings*, 2007-NMSC-048, ¶¶ 19-21.

5

**{17}** Habeas corpus proceedings under Rule 5-802, like motions for postconviction relief under former Rule 57, are in every real sense a continuation of a defendant's criminal case. Thus, this Court in *Caristo* rejected the parties' assertion that habeas corpus actions are governed by the Rules of Civil Procedure because "post-conviction habeas actions under [Rule 5-802], as under Rule 57, are no longer appropriately characterized as civil proceedings." *Caristo*, 112 N.M. at 628-29, 818 P.2d at 406-07 (footnote omitted).

**{18}** As this history demonstrates, both our procedural rules and our judicial precedents have come to reflect the reality that postconviction habeas corpus proceedings are part of a defendant's criminal case. *See* Rule 5-802(F) (referring to the petitioner as "the defendant"); *State v. Davis*, 2003-NMSC-022, ¶ 1, 134 N.M. 172, 74 P.3d 1064 (calling a habeas corpus petitioner "Defendant"). Even the district court in this case referred to Allen as "Defendant" throughout its order dismissing his habeas petition for failure to answer deposition questions.

**{19}** The role of a Rule 5-802 habeas petition as part of a criminal proceeding is exemplified in a case like this, in which a defendant alleges ineffective assistance of counsel, because a petition for writ of habeas corpus often presents the criminal defendant's first opportunity to raise this claim. *See State v. Hunter*, 2006-NMSC-043, ¶ 30, 140 N.M. 406, 143 P.3d 168 ("[H]abeas corpus proceedings are the preferred avenue for adjudicating ineffective assistance of counsel claims, because the record before the trial court may not adequately document the sort of evidence essential to a determination of trial counsel's effectiveness," in which case "an evidentiary hearing on the issue of trial counsel's effectiveness may be necessary." (internal quotation marks and citations omitted)). If a habeas corpus petitioner establishes that he or she has been denied the constitutional right to effective assistance of counsel and therefore never had a constitutionally adequate trial or sentencing in the first place, the remedy is to vacate the conviction or sentence and require those proceedings to be conducted in a constitutionally compliant manner. *See, e.g., Rael v. Blair*, 2007-NMSC-006, ¶¶ 1, 29, 141 N.M. 232, 153 P.3d 657 (reversing due to ineffective assistance of counsel and remanding for a new trial).

**{20}** In death sentence cases in particular, a habeas corpus action is made a mandatory phase of a defendant's criminal proceeding by Rule 5-802. Rule 5-802(F)(1) requires automatic state court habeas corpus review "upon issuance of the mandate of the Supreme Court affirming the sentence of death." The district court is required to "promptly appoint counsel to represent the defendant," *id.*, and counsel is required to file a petition for writ of habeas corpus on the defendant's behalf. Rule 5-802(F)(3). Rule 5-802 recognizes that a defendant in a habeas corpus proceeding retains many of the protections of our criminal law. *See* Rule 5-802(A). These provisions underscore that Allen's criminal proceedings are not yet concluded.

**{21}** With regard to whether a defendant may be compelled to give a statement or deposition in connection with the defendant's habeas petition, Rule 5-802 contains no exception to the criminal discovery provisions of Rule 5-503, which prohibits the State in a criminal proceeding from compelling witness statements or depositions from defendants.

6

Defendant argues that since postconviction habeas corpus proceedings are part of a criminal proceeding, Rule 5-503's prohibition against compelling statements from a defendant must govern discovery conducted in preparation for the habeas corpus evidentiary hearing. The State argues that, because Rule 5-802 itself does not address depositions or other discovery, a district court can fashion any discovery procedures it chooses, without regard to the generally applicable discovery limitations of the Rules of Criminal Procedure. The State also contends that the provisions of Rule 5-503 do not apply to Defendant because he is no longer protected by the presumption of innocence and because he has the burden of persuasion to overcome the validity of his conviction. *See Roberts v. Staples*, 79 N.M. 298, 301, 442 P.2d 788, 791 (1968) ("In habeas corpus proceedings, the movant has the burden of showing that he [or she] is entitled to the writ and the writ should be denied where the allegations are insufficient.").

**{22}** Rule 5-503 is the exclusive procedural rule governing compelled statements and depositions in a criminal proceeding in the district courts. Compelled statements are the primary means of obtaining information from witnesses during discovery in a criminal case and can be required from "[a]ny person, *other than the defendant*, with information which is subject to discovery." Rule 5-503(A) (emphasis added). The availability of depositions in criminal proceedings is even narrower than that of nondeposition witness statements: "While depositions are allowable in criminal cases, the circumstances permitting their use must be exceptional." *McGuinness v. State*, 92 N.M. 441, 442, 589 P.2d 1032, 1033 (1979). Under Rule 5-503(B), depositions are allowed in criminal proceedings only "upon:

(1) agreement of the parties; or
(2) order of the court . . . upon a showing that it is necessary to take the person's deposition to prevent injustice."

**{23}** Generally, the district court is justified in ordering a person's deposition in a criminal case only if the State shows that the person would be unable or unwilling to attend the trial or a hearing. *See* Rule 5-503 Comm. Commentary; *see also McGuinness*, 92 N.M. at 442, 589 P.2d at 1033 (explaining that depositions generally cannot be used where the witness, whose testimony in court could be obtained by proper process, is within the jurisdiction of the court); 5 Wayne R. LaFave et al., *Criminal Procedure* § 20.2(e), at 374-75 (3d ed. 2007) (explaining that fewer than a dozen states allow broad use of depositions in criminal cases and that, where depositions are allowed, they are available "primarily for the purpose of preserving the testimony of a witness likely to be unavailable at trial").

**{24}** New Mexico's Rules of Criminal Procedure and those in other jurisdictions universally prohibit depositions of criminal defendants. *See* LaFave et al., *supra*, § 20.2(e), at 376-77 (explaining that, although the states that allow depositions in criminal cases generally allow both the defense and the prosecution to use this discovery tool, "[t]he one exception, of course, is that the prosecution may not depose the defendant"); *see, e.g.*, Ariz. R. Crim. P. 15.3(a) (enumerating circumstances under which the court may order a deposition "of any person except the defendant"); N.D. R. Crim. P. 15(a)(1) ("[T]he

7

defendant may not be deposed unless the defendant consents.”).

**{25}** To the extent the State argues that Allen has waived his privilege against self-incrimination by filing a petition for writ of habeas corpus setting forth the allegations of his claim for relief, we disagree. The petition itself is merely a pleading and not evidence. If offered into evidence, it would be hearsay under Rule 11-801(C) NMRA, and no argument has been made that it fits within any exclusion or exception to the exclusion of hearsay evidence in Rules 11-802 to -804 NMRA. Of course, if Allen should voluntarily present his own testimony in the course of the habeas corpus proceedings, he opens himself up to cross-examination in the same manner as any other witness. *See Brown v. United States*, 356 U.S. 148, 155-56 (1958) (explaining that when a criminal defendant chooses to testify, the defendant determines the area of disclosure and is subject to cross-examination on matters raised by his or her own testimony); *State v. Wildgrube*, 2003-NMCA-108, ¶ 29, 134 N.M. 262, 75 P.3d 862 (quoting *Brown* with approval).

**{26}** We conclude that Rule 5-503 precludes the State from deposing Allen in this case. We need not reach the hypothetical New Mexico constitutional question whether, in the absence of Rule 5-503's prohibition against compelled statements from a defendant, a court could compel a deposition or other statement from a defendant in a habeas proceeding, notwithstanding a claim of privilege against self-incrimination. We simply note the undeniable reality that a defendant's compelled testimony in a habeas action could result in imprisonment or death if the compelled statements bring about a denial of his habeas action, on the one hand, or contribute to evidence used to incriminate him in his retrial or resentencing if he prevails in the habeas, on the other.

**{27}** We also need not reach the question whether forcing a criminal defendant on habeas review to forfeit his protection from self-incrimination in order to assert his constitutional right to effective assistance of counsel at his first trial or sentencing could create an impermissible constitutional conflict. *See generally Simmons v. United States*, 390 U.S. 377, 394 (1968) (holding that "when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt" because it is "intolerable that one constitutional right should have to be surrendered in order to assert another"); *State v. Brown*, 2006-NMSC-023, ¶ 9, 139 N.M. 466, 134 P.3d 753 ("[I]t is well settled that forcing a criminal defendant to surrender one constitutional right in order to assert another is intolerable." (internal quotation marks and citation omitted)).

**{28}** The reason those state and federal constitutional questions need not be resolved in this action is because the dispositive resolution to this case is explicitly provided by our established Rules of Criminal Procedure. "It is an enduring principle of constitutional jurisprudence that courts will avoid deciding constitutional questions unless required to do so. We have repeatedly declined to decide constitutional questions unless necessary to the disposition of the case." *Schlieter v. Carlos*, 108 N.M. 507, 510, 775 P.2d 709, 712 (1989); *see also Baca v. N.M. Dep't of Pub. Safety*, 2002-NMSC-017, ¶ 12, 132 N.M. 282, 47 P.3d

441 (noting that courts exercise judicial restraint by deciding cases on the narrowest possible grounds and avoid reaching unnecessary constitutional issues).

{29}    Because postconviction habeas corpus is part of Allen's criminal proceedings under our Rules of Criminal Procedure, we hold that it was improper under Rule 5-503 for the district court to order him to answer questions at a deposition and to dismiss his habeas petition or otherwise sanction him for his refusal to answer the questions.[1]

**C.    Communications Relevant to Allen's Ineffective Assistance of Counsel Claims Are Excepted from Attorney-Client Privilege by Rule 11-503(D)(3) and Are Subject to Other Forms of Discovery**

{30}    The district court found that Allen had waived his attorney-client privilege regarding all communications with his attorneys by raising ineffective assistance of counsel claims. Allen argues that the district court construed any waiver of the attorney-client privilege more broadly than was justified by his claim of ineffective assistance of counsel. Accordingly, we address the extent to which his claim of ineffective assistance of counsel affects the applicability of his attorney-client privilege in the course of discovery and other proceedings below.

{31}    The prevailing view in United States jurisdictions is that communications relevant to a claim of ineffective assistance of counsel are not protected by the attorney-client privilege. *See* Edward J. Imwinkelried, *The New Wigmore: Evidentiary Privileges* § 6.13.2, at 945 (2002); *see also Strickland v. Washington*, 466 U.S. 668, 691 (1984) (explaining that determining whether a defendant had effective counsel may require "inquiry into counsel's conversations with the defendant" to properly assess "counsel's investigation decisions [and] other litigation decisions"). Courts reach this result "in two different ways, by establishing either a waiver by the holder or . . . a special exception to the scope of the privilege." Imwinkelried, *supra*, § 6.12, at 840. Because New Mexico's Rules of Evidence contemplate both exceptions to and waiver of the attorney-client privilege, we must consider which of the two theories applies to communications relevant to an ineffective assistance of counsel claim.

{32}    Just as the "rules of evidence . . . govern the admissibility of evidence during the penalty phase of [a] capital felony sentencing proceeding," *State v. Sanchez*, 2008-NMSC-066, ¶ 22, 145 N.M. 311, 198 P.3d 337, they must also apply in the habeas phase because both are controlled by the express terms of Rule 11-101 NMRA that the

---

[1]As this Court noted in *Caristo*, 112 N.M. at 629 n.5, 818 P.2d at 407 n.5, Rule 5-802 "appears to apply to all habeas corpus proceedings" and not just to criminal postconviction proceedings. Different considerations might apply to the rare habeas proceedings that do not involve postconviction challenges to the legality of a criminal conviction, but we need not address those hypothetical issues here.

evidence "rules govern proceedings in the courts of the State of New Mexico." No exception to that general rule of applicability is provided for habeas corpus cases in any New Mexico court rule, statute, judicial precedent, or other provision of law.

{33}     The attorney-client privilege in New Mexico is expressly provided for and governed by New Mexico's Rules of Evidence. *See* Rule 11-503; *Pub. Serv. Co. of N.M. v. Lyons*, 2000-NMCA-077, ¶¶ 11-13, 129 N.M. 487, 10 P.3d 166. In this regard, New Mexico's approach to the privilege differs from that taken by the Federal Rules of Evidence, which has no codified attorney-client privilege. *See* Fed. R. Evid. 501 (providing that the common law continues to govern attorney-client privilege). Although New Mexico's attorney-client privilege generally applies to "confidential communications made for the purpose of facilitating the rendition of professional legal services to the client," Rule 11-503(B), "[t]here is no privilege . . . [a]s to a communication relevant to an issue of breach of duty by the lawyer to the lawyer's client," Rule 11-503(D)(3).

{34}     The common law has long recognized that even where an attorney-client privilege exists, it can be waived by the client. *See* 8 John Henry Wigmore, *Evidence in Trials at Common Law* § 2292, at 554 (McNaughton rev. 1961) (providing the common-law elements of the privilege and stating that its protection may be waived); *see, e.g.*, *Blackburn v. Crawfords*, 70 U.S. 175, 194 (1865) ("The client may waive the protection of the [attorney-client privilege]. The waiver may be express or implied."). Federal courts have accordingly held that a habeas corpus petitioner waives the attorney-client privilege for communications relevant to claims of ineffective assistance of counsel. *See, e.g.*, *United States v. Pinson*, 584 F.3d 972, 977-78 (10th Cir. 2009) ("When a habeas petitioner claims that he received ineffective assistance of counsel, he puts communications between himself and his attorney directly in issue, and thus by implication waives the attorney-client privilege with respect to those communications."). If we needed to reach the issue of waiver in this case, Rule 11-511 NMRA and its general waiver provisions provide that any of our evidentiary privileges can be waived by the holder of the privilege if he or she "voluntarily discloses or consents to disclosure of any significant part of the matter or communication."

{35}     Jurisdictions following the federal model for evidentiary privileges have no codified exceptions to the attorney-client privilege and must employ a waiver analysis to reach the conclusion that communications relevant to a claim of an attorney's breach of duty to the client are not protected by the attorney-client privilege. *See, e.g.*, *State v. Walen*, 563 N.W.2d 742, 753 (Minn. 1997) (holding "that a defendant who claims ineffective assistance of counsel necessarily waives the attorney-client privilege as to all communications relevant to that issue"). Even states with codified exceptions to the attorney-client privilege often use the term "waiver" instead of "exception" to describe why communications relevant to ineffectiveness claims are not covered by the privilege. *See, e.g.*, *Rodriguez v. Commonwealth*, 87 S.W.3d 8, 11 (Ky. 2002) (finding that "waiver of the lawyer/client privilege is implied and automatic . . . where a defendant testifies adversely to his attorney's competence" (internal quotation marks and citation omitted) and explaining that this "universally accepted" principle is "embodied in KRE 503(d)(3)," which codifies an

10

exception for communications relevant to an attorney's alleged breach of duty).

{36}    Despite the plain language of Rule 11-503(B), New Mexico precedents have not previously explained that communications relevant to ineffective assistance of counsel claims are excepted at the outset from the attorney-client privilege rather than waived. *See, e.g., State v. Reyes*, 2002-NMSC-024, ¶ 47, 132 N.M. 576, 52 P.3d 948 (explaining that the trial court was unable to resolve one of the defendant's ineffective assistance of counsel claims because the defendant did not waive his attorney-client privilege); *State v. Richardson*, 114 N.M. 725, 730, 845 P.2d 819, 824 (Ct. App. 1992) (recognizing that an evidentiary hearing on the defendant's ineffective assistance of counsel claims "may require inquiry into confidential communications between defense counsel and his client" and holding that "by raising the issue on appeal [the d]efendant waives any claim to confidentiality" under Rule 11-503(D)(3)). We now clarify that in New Mexico an "exception" to the attorney-client privilege is analytically distinguishable from a "waiver" of that privilege and that the "breach of duty" exception provided by Rule 11-503(D)(3) applies to matters relevant to ineffectiveness claims, making it unnecessary to consider waiver of an existing privilege.

{37}    New Mexico's evidentiary privileges are limited to those promulgated by this Court, and we avoid applying common-law principles that are inconsistent with the language of our rules. *See Pub. Serv. Co. of N.M.*, 2000-NMCA-077, ¶¶ 11, 14 (explaining that our courts must not "engage in the type of ad hoc judicial waiver analysis engaged in by other courts that are free to apply the common law"). The plain language of Rule 11-503(D)(3) states that "[t]here is no privilege . . . [a]s to a communication relevant to an issue of breach of duty by the lawyer to the lawyer's client." By claiming ineffective assistance of counsel, a habeas petitioner alleges a breach of his or her counsel's duty to provide effective assistance of counsel. Because there would be no attorney-client privilege for communications relevant to those claims, there is no privilege that could be subjected to a waiver analysis under the general provisions of Rule 11-511. *See State v. Journey*, 301 N.W.2d 82, 89 (Neb. 1981) (explaining that communications relevant to the defendant's ineffectiveness claim fell into Nebraska's exception to the attorney-client privilege and that the defendant could not waive a privilege he did not have). Application of a waiver analysis under Rule 11-511 is only appropriate in cases where no exception under Rule 11-503 applies in the first place. *See Pub. Serv. Co. of N.M.*, 2000-NMCA-077, ¶¶ 14, 22 (adopting a narrow approach to the "at-issue" waiver doctrine under Rule 11-511 to be used in cases where no exception applies).

{38}    Accordingly, we hold that a habeas petitioner's claim of ineffective assistance of counsel removes from the protection of the attorney-client privilege those communications specifically relevant to the claim. *See* Rule 11-503(D)(3) ("There is no privilege . . . [a]s to a communication *relevant* to an issue of breach of duty." (emphasis added)). A petitioner asserting the attorney-client privilege bears the burden of demonstrating that the privilege applies. *See Piña v. Espinoza*, 2001-NMCA-055, ¶ 24, 130 N.M. 661, 29 P.3d 1062. It is then the judge's function to make evidentiary rulings determining whether lawyer-client communications are relevant to the specific ineffective assistance of counsel claims raised

11

by the petitioner and thereby subject to the exception. Rule 11-104(A) ("Preliminary questions concerning . . . the existence of a privilege . . . shall be determined by the court."). Any communications between Allen and his trial counsel that are relevant to Allen's specific ineffectiveness claims are excepted from the attorney-client privilege, and those that are not relevant are neither excepted nor waived simply because Allen filed a petition for writ of habeas corpus.

**{39}**     Notwithstanding our holding that the State may not compel a statement, including a deposition, of Defendant, it still may employ other means of discovery into nonprivileged attorney-client communications permitted under our Rules of Criminal Procedure. Under Rule 5-503(C), "parties may obtain discovery regarding any matter, not privileged, which is relevant to the offense charged or the defense of the accused person." Under Rule 5-503(A), the State can take a witness statement from any person other than Allen. The State can, for example, ask Allen's trial counsel about nonprivileged communications relevant to Allen's ineffectiveness claims. *See State v. Crislip*, 109 N.M. 351, 358, 785 P.2d 262, 269 (Ct. App. 1989) (Hartz, J., specially concurring) ("In habeas proceedings, there is an opportunity in an evidentiary hearing to have trial counsel fully describe his or her reasons for acting or failing to act." (internal quotation marks and citation omitted)).

## III.     CONCLUSION

**{40}**     We reverse the dismissal of Allen's petition for writ of habeas corpus and remand to the district court for further proceedings consistent with this Opinion.

**{41}     IT IS SO ORDERED.**

_____
**CHARLES W. DANIELS, Chief Justice**

**WE CONCUR**:

_____
**PATRICIO M. SERNA, Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

**Topic Index for *Allen v. LeMaster*, Docket No. 31,100**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-DA | Dismissal of Appeal |
| | |
| **AT** | **ATTORNEYS** |
| AT-AP | Attorney-Client Privilege |
| AT-EA | Effective Assistance of Counsel |
| AT-PR | Professional Responsibility |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-SL | Self-incrimination |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-CF | Capital Felony |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-DP | Death Penalty |
| CA-DD | Deposition and Discovery |
| CA-EA | Effective Assistance of Counsel |
| CA-EH | Evidentiary Hearing |
| CA-RA | Right Against Self-Incrimination |
| CA-WH | Writ of Habeas Corpus |
| | |
| **EV** | **EVIDENCE** |
| EV-AE | Admissibility of Evidence |
| EV-AP | Attorney-Client Privilege |
| EV-DP | Deposition |
| EV-DC | Discovery |
| EV-PV | Privileges |
| EV-PD | Psychological Evidence |
| | |
| **RE** | **REMEDIES** |
| RE-WH | Writ of Habeas Corpus |