This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                          **NO. 30,844**

**NOEL R. CALDERON, JR.,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Lisa C. Schultz, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
M. Anne Kelly, Assistant Attorney General
Albuquerque, NM

for Appellee

Jacqueline L. Cooper, Chief Public Defender
Tania Shahani, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**GARCIA, Judge.**

A jury convicted Defendant of two counts of armed robbery, conspiracy to commit armed robbery, tampering with evidence, and conspiracy to commit tampering with evidence. Defendant raises four issues on appeal: (1) his two conspiracy convictions violated his right against double jeopardy; (2) there was insufficient evidence to support his convictions; (3) his trial counsel was ineffective; and (4) the prosecutor committed misconduct during closing argument and sentencing. We reverse Defendant's conviction for conspiracy to commit tampering with evidence on double jeopardy grounds and affirm Defendant's remaining convictions for armed robbery, conspiracy to commit armed robbery, and tampering with evidence.

**BACKGROUND**

Because the parties are familiar with the factual and procedural background and because this is a memorandum opinion, we do not provide an initial, detailed summary of the proceedings below. We provide details as necessary in our discussion of each issue.

**DISCUSSION**

**Double Jeopardy**

Defendant asserts on appeal that his two convictions for conspiracy violate the constitutional prohibition against double jeopardy because the evidence at trial did not support separate conspiratorial agreements to support more that one count of

conspiracy. We review the constitutional question of whether there has been a double jeopardy violation de novo. *State v. Andazola*, 2003-NMCA-146, ¶ 14, 134 N.M. 710, 82 P.3d 77. This includes double jeopardy challenges involving multiple conspiracy charges. *State v. Gallegos*, 2011-NMSC-027, ¶ 50-51, 149 N.M. 704, 254 P.3d 655. We note, however, that where factual issues are intertwined with the double jeopardy analysis, the district court's factual determinations are subject to a deferential substantial evidence standard of review. *State v. Rodriguez*, 2006-NMSC-018, ¶ 3, 139 N.M. 450, 134 P.3d 737.

Defendant argues that double jeopardy was violated because he was charged with multiple violations of the same statute based upon a single course of conduct. *See Gallegos*, 2011-NMSC-027, ¶¶ 28-50 (recognizing the unit of prosecution test for multiple charges under the conspiracy statute); *State v. DeGraff*, 2006-NMSC-011, ¶ 25, 139 N.M. 211, 131 P.3d 61 (holding that there are two types of double jeopardy cases with regard to multiple punishments: (1) when a defendant is charged with multiple violations of the same statute based on a single course of conduct referred to as "unit of prosecution" cases; and (2) when a defendant is charged with violations of multiple statutes for the same conduct referred to as "double-description" cases (internal quotation marks and citation omitted)). It is not disputed that we are dealing with a unit of prosecution case.

A unit of prosecution challenge uses a two-step inquiry.  First, we ask whether the unit of prosecution is clearly defined by the statute at issue and, second, whether the charged acts were sufficiently distinct to justify multiple punishments under the same statute.  *State v. Swick*, 2012-NMSC-018, ¶ 33, 279 P.3d 747; *State v. Stewart*, 2005-NMCA-126, ¶ 13, 138 N.M. 500, 122 P.3d 1269.  In this case, the first inquiry, whether a unit of prosecution is clearly defined in NMSA 1978, Section 30-28-2 (1979), is not at issue.  The only issue is whether the two conspiracy charges were sufficiently distinct to justify multiple punishments under the same statute.  *State v. Bahney*, 2012-NMCA-039, ¶ 17, 274 P.3d 134 (stating that "if no legislative guidance is apparent, [the court must determine] whether a defendant's acts are separated by sufficient indicia of distinctness to justify multiple punishments under the same statute" (internal quotation marks and citation omitted)).

Under *Gallegos*, we recognize that "the Legislature established what we call a rebuttable presumption that multiple crimes are the object of only one, overarching, conspiratorial agreement subject to one, severe punishment set at the highest crime conspired to be committed." 2011-NMSC-027, ¶ 55.  We have "adopted 'the totality of the circumstances test utilized by the federal circuits' in announcing the nature of the evidence required to overcome the presumption." *Bahney*, 2012-NMCA-039, ¶ 17 (alternation omitted).  The federal test analyzes whether:

4

> (a) the location of the two alleged conspiracies is the same; (b) there is a significant degree of temporal overlap between the two conspiracies charged; (c) there is an overlap of personnel between the two conspiracies (including unindicted as well as indicted co-conspirators); and (d) the overt acts charged and (e) the role played by the defendant . . . in the alleged conspiracies are similar.

*Gallegos*, 2011-NMSC-027, ¶ 42 (alterations, internal quotation marks, and citation omitted).

Our first inquiry is to determine "the precise nature and extent" of the agreement between Defendant and Aldape that "embraces and defines its object[ives]." *Id.* ¶ 37 (internal quotation marks and citation omitted). Where a conspiracy involves a continuing crime, it may last for years and involve numerous substantive offenses that end only when "the purposes of the conspiracy have been accomplished or abandoned." *Id.* ¶ 46 (internal quotation marks and citation omitted). The agreement can also evolve over time to embrace a new objective to the original criminal combination. *Id.* ¶ 62.

Similar to *Gallegos*, the evidence would support the presumption that Defendant "entered into only one agreement and took part in only one conspiracy." *See id.* ¶ 57. Based upon the totality of the circumstances presented in this case, the evidence indicates that Defendant and Aldape conspired to successfully commit multiple convenience store robberies, thereby avoiding apprehension and arrest. As a result, the agreement to successfully rob two stores appears singular and the State

5

would bear the heavy burden of rebutting the presumption of singularity. *Id.* ¶¶ 55-56. The burden then shifted to the State to overcome the presumption of singularity regarding the conspiratorial agreement between Defendant and Aldape. *Id.* Where the State fails to overcome this presumption, "the appropriate remedy is to vacate [the d]efendant's redundant convictions with punishment imposed on the single remaining conspiracy at the level of the highest crime conspired to be committed[.]" *Id.* ¶ 64 (internal quotation marks and citation omitted).

The evidence in this case cannot rebut the presumption that Defendant and Aldape had one singular agreement to successfully commit the two robberies, thereby avoiding apprehension and arrest. Defendant and Aldape were both involved in an overlapping and continuous series of related events. Both robberies occurred during the same evening, with the same weapon, wearing the same articles of clothing, and with Defendant acting as the getaway driver in both situations. The evolving acts of ducking down in the car, moving the car behind some bushes, and throwing the incriminating evidence out the car window confirms that the co-conspirators intended to avoid apprehension while carrying out the objectives of their singular agreement to successfully commit the two robberies. Similar to the acts of hiding after the first robbery, the evidence was thrown from Defendant's car within minutes of the second robbery while attempting to flee the scene. This singular conspiracy presumption is

6

consistent with the State's indictment that sought only one conspiracy charge for the two separate robberies that occurred only hours apart. We therefore vacate Defendant's conviction for conspiracy to commit tampering of evidence because it was part of the singular conspiracy to successfully commit the two convenience store robberies, while avoiding apprehension and arrest. We next address the sufficiency of the evidence for Defendant's remaining convictions.

**Directed Verdict**

Defendant asserts that the district court erred in denying his motion for directed verdict because the evidence was insufficient to establish the requisite mens rea for the crimes for which he was convicted. When reviewing the denial of a directed verdict, we must determine whether there was sufficient evidence presented to support the underlying charges. *State v. Sena*, 2008-NMSC-053, ¶ 10, 144 N.M. 821, 192 P.3d 1198.

> The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction. When considering the sufficiency of the evidence, [the appellate courts do] not evaluate the evidence to determine whether some hypothesis could be designed which is consistent with a finding of innocence. Instead, we view the evidence as a whole and indulge all reasonable inferences in favor of the jury's verdict while at the same time asking whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*State v. Johnson*, 2010-NMSC-016, ¶ 57, 148 N.M. 50, 229 P.3d 523 (internal

quotation marks and citation omitted). We have already vacated Defendant's conviction for conspiracy to commit tampering with evidence because it should have merged with his conviction for conspiracy to commit armed robbery. As such, we will only address the sufficiency of the evidence for Defendant's remaining convictions.

**1.      Armed Robbery and Conspiracy to Commit Armed Robbery**

Both parties concede that Aldape committed the armed robberies in question. The jury was instructed that it could find Defendant guilty of armed robbery based on a theory of accessory liability if it found that Defendant intended the robberies to be committed and that Defendant helped, encouraged, or caused the robberies to be committed. As such, if substantial evidence exists to support Defendant's conviction for conspiracy to commit armed robbery, then it follows that his conviction for armed robbery based on accomplice liability is also supported by substantial evidence.

To support Defendant's conviction for conspiracy to commit armed robbery, the State was required to show that he knowingly combined with Aldape to commit the armed robberies. UJI 14-2810 NMRA. Defendant contends that the State presented no testimony or other evidence establishing his knowledge or intent. Defendant argues that his mere presence in the Cadillac "does not suggest that he was or should have been aware of [Aldape's] scheme," because "[t]he simple fact that

8

[Defendant] was driving his car with [Aldape] in it after the second incident is not sufficient evidence to convict [him]."

To support his contention that the evidence was insufficient, Defendant relies on *State v. Mariano R.*, 1997-NMCA-018, 123 N.M. 121, 934 P.2d 315. In *Mariano R.*, we reversed a defendant's conviction for conspiracy where the underlying offense involved multiple vehicle occupants shooting from the vehicle, even where the defendant knew that there were guns in the car and was present when one was fired. *Id.* ¶¶ 2, 5. We reasoned that "[t]he evidence would suffice to establish that the [defendant] knew that there were firearms in the vehicle and was present when one was fired. Beyond that, however, one must speculate." *Id.* ¶ 5. The evidence was insufficient to support a conspiracy conviction because there was "no evidence regarding what happened in the vehicle before the shot was fired." *Id.*

We explained in *Mariano R.* that, while we reviewed the evidence "in light of common knowledge or common experience[,]" we must not confuse common knowledge and experience "with cynical speculation." *Id.* ¶ 7 (internal quotation marks and citation omitted). "In reviewing a determination of guilt, we cannot sanction a view that assumes the worst about human nature. That is an essential message of the presumption of innocence. Evidence is required[.]" *Id.* However, unlike the evidence in *Mariano R.*, the evidence in the instance case showed more than

mere presence. Viewed in the light most favorable to the State, the evidence presented at trial established that Defendant knowingly and intentionally drove the getaway car and was aware of both robberies. *See State v. Carrasco*, 1997-NMSC-047, ¶ 11, 124 N.M. 64, 946 P.2d 1075 ("In reviewing a claim of insufficient evidence, th[e Supreme] Court will view the evidence in the light most favorable to supporting the verdict and resolve all conflicts and indulge all inferences in favor of upholding the verdict." (internal quotation marks and citation omitted)).

During the first robbery, the record indicates that Defendant backed into a parking space at the apartments next to the Pic Quik and waited for Aldape. After the commission of the robbery, Aldape ran to Defendant's car and slid into it. When a police officer drove by shortly thereafter, Defendant and Aldape both ducked down in the car as if to avoid detection. The car was then moved to a second spot behind some bushes as two other police officers drove by the robbery location. In addition, Defendant picked Aldape up after the second robbery and was still driving when Aldape threw the items related to the robberies out of the car window. One of those items was Defendant's bandana with his initials on it, the same bandana that Aldape wore while committing both robberies. Another item thrown from the car window after it was taken from the second robbery was the cash drawer from the register with cash still located inside. In addition, the State presented evidence that Defendant's

testimony was fabricated based upon the search of Defendant's car after the arrest and the lack of any cell phone on his person or in his car.

It must be remembered that, while conspiracy requires an agreement, the agreement can be nothing more than a mutually implied understanding that can be proved by the cooperative actions of the participants involved. *State v. Smith*, 102 N.M. 512, 514, 697 P.2d 512, 514 (Ct. App. 1985). Conspiracy is often shown through inference from the facts and circumstances considered as a whole. *State v. Ross*, 86 N.M. 212, 214, 521 P.2d 1161, 1163 (Ct. App. 1974). In contrast to *Mariano R.* and other cases on which Defendant relies, a rational jury could infer from the totality of the circumstances in this case that Defendant was an active participant with Aldape in the robberies. *See Carrasco*, 1997-NMSC-047, ¶¶ 11-14 (holding that the evidence was sufficient to support accessory liability for armed robbery where the defendant drove the car to the robbed convenience store and kept the engine running, but claimed he was asleep during the robbery and did not intend the acts committed by the principals). The jury is not required to accept Defendant's version of the facts that support an argument that he did not have the required mens rea for these offenses. *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 ("Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts."). Our review is only required

to determine that the evidence here was not so bare that, as a matter of law, no rational jury could find the required facts to support a conviction. *See Carrasco*, 1997-NMSC-047, ¶ 14. The foregoing evidence was sufficient for a rational jury to find Defendant guilty of conspiracy to commit armed robbery.

The jury could easily infer from the evidence presented at trial that Defendant and Aldape joined together in a mutually implied understanding to rob the two convenience stores. Defendant's story that, on two occasions, he was the unwilling dupe of Aldape's plan was somewhat incredulous and lacked credibility. *See Rojo*, 1999-NMSC-001, ¶ 19 (recognizing that a jury is free to reject a defendant's version of the events). The circumstantial evidence establishes that, as co-conspirator, Defendant both helped and encouraged Aldape in the commission of the robberies. As a result, there was sufficient evidence to find Defendant guilty of both armed robberies.

**2.    Tampering With Evidence**

To prove that Defendant was guilty of the crime of tampering with evidence, the State was required to show beyond a reasonable doubt "that [D]efendant destroyed or hid or placed a cash register drawer, and/or a brown handkerchief, and/or a black beanie, and/or a machete . . . intend[ing] to prevent [his] apprehension, prosecution, or conviction . . . ." *See* UJI 14-2241 NMRA. We have already held that the evidence

12

was sufficient for a jury to infer that Defendant and Aldape conspired to commit the robberies, and there is no dispute that tampering with evidence occurred. However, Defendant contends on appeal that the State presented no testimony or other evidence which established that he knowingly or intentionally combined with or encouraged Aldape to dispose of any evidence. We disagree.

At trial, the State presented evidence that Aldape threw the items he was wearing and the proceeds from the second robbery from Defendant's car as it left the scene. Defendant himself testified that he believed Aldape discarded the items so that the items could not be used to prosecute himself and Aldape. The jury could reasonably infer from this evidence that Aldape discarded the evidence from Defendant's car to further the purposes of his conspiracy with Defendant. Surely, Defendant and Aldape did not intend to be apprehended by the police when they agreed to rob the convenience stores. As such, the evidence was sufficient for the jury to find Defendant guilty of tampering with evidence based on a theory of accomplice liability.

**Ineffective Assistance of Counsel**

We next address Defendant's contention on appeal that defense counsel was ineffective in failing to call witnesses material to his defense. We review claims of ineffective assistance of counsel de novo. *State v. Boergadine*, 2005-NMCA-028,

13

¶ 33, 137 N.M. 92, 107 P.3d 532. However, we are required to begin with the presumption that counsel was competent. *See id.* To establish ineffective assistance of counsel, a defendant has the burden to prove (1) that his counsel's performance fell below that of a reasonably competent attorney, and (2) that he was prejudiced by his counsel's deficient performance. *Id.* "Defense counsel's performance is deficient if counsel's representation fell below an objective standard of reasonableness." *State v. Roybal*, 2002-NMSC-027, ¶ 21, 132 N.M. 657, 54 P.3d 61 (internal quotation marks and citations omitted). We do not find ineffective assistance of counsel if there is a plausible, rational trial strategy or tactic to explain counsel's conduct. *See State v. Bernal*, 2006-NMSC-050, ¶ 32, 140 N.M. 644, 146 P.3d 289; *State v. Richardson*, 114 N.M. 725, 729, 845 P.2d 819, 823 (Ct. App. 1992), *abrogated on other grounds by Allen v. LeMaster*, 2012-NMSC-001, 267 P.3d 806.

The record on appeal often does not provide enough information to adequately determine whether an action was error or caused prejudice. *Bernal*, 2006-NMSC-050, ¶ 33. When such questions arise, further evidence is often required. *Id.* Rather than remand the case to the district court for further hearings, the appellate courts have a general preference that such claims be brought and resolved through habeas corpus proceedings. *Id.* Therefore, this Court will remand to the district court for evidentiary proceedings on direct appeal only when a defendant presents a prima facie case of

14

ineffective assistance of counsel. *Id.*

Defendant argues that "defense counsel failed to subpoena material witnesses and present other evidence that would have corroborated [Defendant's] own testimony at trial." It is not our place on appeal to second guess trial strategies. *State v. Hester*, 1999-NMSC-020, ¶ 11, 127 N.M. 218, 979 P.2d 729. Whether a corroborating witness will benefit or harm a particular case is a matter for counsel to determine as part of one's strategy in defending that case. Defense counsel's strategy is best evaluated during habeas corpus proceedings where trial counsel can provide testimony. Such evidence is also necessary in this case to demonstrate that any alleged errors caused prejudice. We therefore conclude Defendant has not presented a prima facie case of ineffective assistance of counsel, and accordingly, we reject Defendant's ineffective assistance of counsel claim. However, this decision does not preclude Defendant from pursuing habeas corpus proceedings on this issue should he be able to garner evidence to support his claims.

**Prosecutorial Misconduct**

Defendant argues that some of the prosecutor's remarks during closing argument constituted misconduct that deprived him of a fair trial and that statements made during sentencing constituted misconduct that deprived him of a fair sentencing hearing. Defendant failed to object to the prosecutor's remarks and asks us to review

15

his claims for fundamental error. *State v. Allen*, 2000-NMSC-002, ¶ 95, 128 N.M. 482, 994 P.2d 728 ("When the trial court had no opportunity to rule on a claim of prosecutorial misconduct because the defendant did not object in a timely manner, we review the claim on appeal for fundamental error."). To qualify as fundamental error, the remarks must have been "so egregious" and have "had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial." *Id.* (internal quotation marks and citation omitted). "As with any fundamental error inquiry, we will upset a jury verdict only (1) when guilt is so doubtful as to shock the conscience, or (2) when there has been an error in the process implicating the fundamental integrity of the judicial process." *State v. Sosa*, 2009-NMSC-056, ¶ 35, 147 N.M. 351, 223 P.3d 348.

**1.      Closing Argument**

During closing argument, the prosecutor remarked that Defendant testified that he picked up Aldape "a mile or a mile and a half from the Eagle Mart." Defendant argues that this statement was a misrepresentation of material facts rising to the level of fundamental error. We disagree with Defendant that the prosecutor misstated Defendant's testimony, and therefore find no error in the prosecutor's conduct.

Defendant first testified that the distance was "maybe, like, about a mile and a half," and later stated that it was "anywhere from maybe a mile to a half a mile." In

response to Defendant's later statement, the prosecutor said, "Okay. Let's just use that. A mile to a mile and a half. He was there?" Defendant responded, "Yeah" to the prosecutor's statement. Viewing the prosecutor's remark in this context, there is nothing in the record suggesting that it was an incorrect statement of Defendant's testimony. It did not, as Defendant claims, twist Defendant's testimony into unbelievable testimony. As such, the prosecutor's remark during closing argument about the distance from the Eagle Mart was not fundamental error.

**2. Sentencing**

At sentencing, the district court considered a pre-sentence report (PSR) prepared by probation services. Relying on the PSR, the district court sentenced Defendant to five years in prison with the rest of his twenty-five and a half year sentence suspended. Defendant argues on appeal the State possessed inaccurate information about him, confusing him with his father, and it was misconduct for the State to suggest at sentencing that Defendant's criminal history was worthy of consideration.

Defendant's argument appears to assert that the PSR conflated Defendant's criminal history with that of his father. The PSR is not part of the appellate record, and we cannot presume, based on the available record, that it contained inaccurate information or that the "the prosecutor inappropriately used his father's prior felony

17

convictions to convince the judge to impose a more severe sentence." To the contrary, while the prosecutor noted Defendant's criminal history to the district court, he did not further elaborate on Defendant's history and instead chose to focus his sentencing arguments on the facts and circumstances of the instant case. Nothing in the record suggests that the prosecutor was acting in bad faith, nor do the facts available on appeal indicate that the prosecutor's statement of a prior criminal history was so egregious that it deprived Defendant of a fair hearing. *Allen*, 2000-NMSC-002, ¶ 95. In addition, the record reflects that, as early as the initial bond hearing, Defendant was aware of the possibility of confusion between his criminal record and that of his father, who shares the same name. Despite this knowledge, Defendant never challenged the accuracy of the PSR or the prosecutor's statement that Defendant had a criminal history. Defendant similarly chose not to rebut or contradict any criminal history information when he was provided with the opportunity to speak before the district court imposed a sentence. There is no evidence in the record regarding the accuracy or inaccuracy of Defendant's prior criminal history reflected in the PSR. Under the circumstances, we will not reverse for fundamental error. *See State v. Aker*, 2005-NMCA-063, ¶ 22, 137 N.M. 561, 113 P.3d 384 ("[The d]efendant would be entitled to re-sentencing if the lack of advance notice deprived him of the opportunity to rebut evidence that the trial court relied upon in determining his sentence."); *State*

*v. Montoya*, 91 N.M. 425, 427, 575 P.2d 609, 611 (Ct. App. 1978) (finding no error in the district court's consideration of a PSR that included arrests not resulting in convictions, but implying that error might exist if the district court considered inaccurate information or information that the defendant had no opportunity to explain).

We recognize that a defendant has a right to be sentenced on the basis of accurate information. *State v. Lack*, 98 N.M. 500, 508, 650 P.2d 22, 30 (Ct. App. 1982). But the district court in this case only relied on the PSR recommendation, not necessarily upon any prior criminal history of Defendant or the statements made by the prosecutor. We have no clear basis to conclude that the district court relied on any inaccurate criminal history as the reason for the sentence imposed on Defendant. As such, the record does not reflect that the prosecutor's statements during sentencing deprived Defendant of a fair hearing.

**CONCLUSION**

For the foregoing reasons, we reverse Defendant's conviction for conspiracy to commit tampering with evidence and affirm Defendant's convictions for armed robbery, conspiracy to commit armed robbery, and tampering with evidence. We remand this matter to the district court for dismissal of the conspiracy to commit tampering with evidence conviction and for any further proceedings that are necessary

19

upon remand.

**IT IS SO ORDERED.**

_____
**TIMOTHY  L. GARCIA,  Judge**

**I CONCUR:**

_____
**RODERICK T. KENNEDY, Judge**

**JONATHAN B. SUTIN, (dissenting)**

**SUTIN, Judge (dissenting).**

I respectfully disagree with the Majority's conspiracy, double jeopardy analysis. Defendant's underlying and overarching criminal conspiratorial objective was to engage in armed robberies. After the robberies, once pursued by the police, Defendant's newly formed underlying and overarching criminal objective was to get rid of the incriminating evidence. The agreement to discard the evidentiary items (including the cash-filled cash box obtained from the Eagle Qwik Mart) that gave rise to the conspiracy to tamper with evidence charge cannot reasonably be viewed as having been made in furtherance of the overarching criminal objective to commit the armed robberies. The Majority's incorporation of the caveat, "successfully," into the overarching conspiratorial agreement to commit multiple armed robberies, amounts to an unsuccessful attempt to combine the two distinct, separate conspiratorial goals.

Conspiracy is a crime whose object may include the violation of two or more criminal laws. *See Gallegos*, 2011-NMSC-027, ¶ 46. And, although a conspiracy may "mature and expand over time, adding more members and embracing additional criminal objectives without changing the fundamental nature of the single agreement[,]" the conspiracy "ends . . . when the purposes of the conspiracy have been accomplished or abandoned." *Id.* (internal quotation marks and citation omitted). In this case, the conspiracy to commit armed robberies ended when the robberies were

21

accomplished—that is, when Aldape took and "carr[ied] away" U.S. currency and a cash register from the Eagle Qwik Mart (the second convenience store), with the intention to permanently deprive the store of that property. Having accomplished that particular overarching criminal objective, the conspiracy ended, and Defendant and Aldape drove away.

It is, of course, every criminal's intention that he or she is not caught by law enforcement during the commission of the crime or during the getaway. That intention is inherent in any criminal activity, including an overarching robbery goal. But an inherent intention does not make the overarching conspiratorial robbery goal blossom into a larger conspiratorial goal that somehow implicitly includes an agreement, once the police are in pursuit, to get rid of their criminally obtained proceeds. I tend to doubt that criminals consciously plan, at the outset, to throw away their criminally obtained cash. Here, there exists no evidence of an early plan to throw illegally obtained, stolen money or goods away if per chance pursued by law enforcement after the robberies. Even were such a plan discussed before the crimes occurred, my view would remain that the conspiracy to tamper with evidence can be separately charged and a conviction obtained without violating double jeopardy.

Here, distinct and separate from their conspiracy to commit armed robberies was the co-conspirators' separately and later formed agreement to commit the acts that

22

formed the basis of the tampering with evidence charge—that was to "destroy, hide[,] or place a cash register [and other evidentiary items] with the intent to prevent [their] apprehension[.]" Evidence at trial demonstrated that the conspiracy to tamper with evidence arose at approximately the same time when and in approximately the same location where the co-conspirators were spotted and subsequently followed by the police. The conspiracy to tamper with evidence ended when the purpose of the criminal objective had been accomplished—that is, when Defendant's co-conspirator threw the items, including the cash box, out of the window of the moving vehicle.

*Gallegos* does not support the Majority's holding. In *Gallegos*, each of the separately charged conspiracies required the defendant and his co-conspirators to contemplate inflicting great bodily harm or death upon the victim. *Id.* ¶ 57. And in *Gallegos*, each separately charged conspiracy was formed and carried out in furtherance of the single overarching conspiratorial goal of murdering the victim. *Id.* ¶ 62.

In this case, unlike in *Gallegos*, the evidence and the applicable laws clearly support the existence of two separate conspiratorial objectives. To convict Defendant of conspiracy to commit armed robbery, the State was required to show that Defendant and his co-conspirator agreed to

> take and carry away a cash register and U.S. currency, which had some value, from Pic Qwik or from [the store clerks'] immediate control,

23

intending to permanently deprive Pic Q[w]ik of the property, and . . . [D]efendant was armed with a machete, a deadly weapon, and . . . [D]efendant took the property by use or threatened use of force or violence[.]

*See* UJI 14-1621 NMRA; UJI 14-2810. To convict Defendant of conspiracy to tamper with evidence, the State was required to show that Defendant and his co-conspirator agreed to "destroy, hide[,] or place a cash register [and other evidentiary items] with the intent to prevent the apprehension, prosecution[,] or conviction of himself or another[.]" *See* UJI 14-2241, 14-2810. Thus, unlike the separately charged conspiracies at issue in *Gallegos*, the separately charged conspiracies in this case shared neither elements nor intent. *See Gallegos*, 2011-NMSC-027, ¶ 57.

In sum, I do not believe that the facts of this case or the applicable law support the existence of a single, overarching conspiracy that included both committing the two armed robberies and discarding the fruits of their criminal pursuit. Application of the principles articulated in *Gallegos* leads to a conclusion opposite that reached by the Majority. I would affirm Defendant's two separate conspiracy convictions.

_____

**JONATHAN B. SUTIN, Judge**

24