STUDER, Admr., Appellant,

v.

VETERANS OF FOREIGN WARS POST 3767, Appellee, et al.

[Cite as *Studer v. Veterans of Foreign Wars Post 3767*, 185 Ohio App.3d 691, 2009-Ohio-7002.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 2008–T–0133.

Decided Dec. 31, 2009.

Anzellotti, Sperling, Pazol & Small Co., L.P.A., Raymond J. Tisone, and Robert D. Vizmeg, for appellant.

Guarnieri & Secrest, P.L.L., Randil J. Rudloff, and John M. Rossi, for appellee.

CYNTHIA WESTCOTT RICE, Judge.

{¶ 1} Appellant, Bryan Studer, administrator of the estate of Kyrsten Studer, appeals the summary judgment of the Trumbull County Court of Common Pleas on his Dram Shop Act claim against appellee, Veterans of Foreign Wars Post 3767 ("VFW"), in favor of the VFW. At issue is whether the former version of the act is constitutional and whether fact issues exist on appellant's Dram Shop Act claim. For the reasons that follow, we affirm in part, reverse in part, and remand.

{¶ 2} Appellant is Kyrsten's father and the administrator of her estate. On Friday evening, April 4, 2003, Kyrsten, who was then 14 years old, and seven of her girlfriends went to C's Pancake House in Hubbard, Ohio. After finishing their meal, at approximately 7:30 p.m., Kyrsten and her friends left the restaurant to go to the bowling alley on State Route 304. They walked in pairs on the berm along Route 304, heading west toward the bowling alley.

{¶ 3} Meanwhile, earlier that day, at approximately noon, William Demidovich, a 69–year–old retired school teacher, went to the Slovenian Workingmen's Educational Club in Farrell, Pennsylvania, where he drank about four beers. At approximately 3:00 p.m., he left the club and drove to the VFW bar in Hubbard,

Ohio. Barmaid Nancy Higgins served Demidovich two draft beers. Between 3:30 p.m. and 5:00 p.m., Demidovich consumed two beers while playing pool. Demidovich consumed two more beers between 5:00 p.m. and 6:00 p.m. while shooting pool with another patron. Between 6:00 p.m. and 7:00 p.m., Demidovich had about three more beers. Sometime after 6:00 p.m., another barmaid, Michelle McMillen, observed Demidovich in the bar. Thus, between noon and 7:00 p.m., Demidovich had about 13 beers. One customer at the VFW bar, Patricia Maiorca, told police that she saw Demidovich sitting at the bar that evening over a period of 45 minutes and that he appeared to be intoxicated.

{¶ 4} At about 8:00 p.m., Demidovich left the VFW bar and began driving to his home in Hubbard in his 1995 red Lincoln Continental. It was dark and raining at that time. As he was driving east on Route 304, he drove off the road and into Kyrsten and her friends, fracturing Kyrsten's skull and killing her, and seriously injuring one of her friends. Demidovich fled the scene and continued home.

{¶ 5} At about 8:30 p.m., police located Demidovich's red Lincoln parked at his mobile home. The vehicle had sustained extensive damage as a result of driving into the young ladies, including contact damage to the front fender and headlight assembly. The front hood was dented and cracked. The windshield sustained a large crack directly above the damaged hood. Tragically, police found a blonde hair stuck to the hood along the right front fender. Officers located Demidovich in his mobile home. They did not see any alcoholic beverages inside. When asked whether he had been involved in a crash that night, he said he had not. Demidovich was taken to the hospital to obtain a sample of his blood for alcohol testing. While en route to the hospital, Demidovich mumbled repeatedly and appeared very lethargic and incoherent. He repeatedly asked whether he had hurt anyone. The officers noted an odor of alcohol coming from Demidovich. He was extremely unstable and often required assistance in walking and standing, and while at the hospital he was swaying while sitting. His eyes were glassy and bloodshot. His speech was very slurred. He was given the horizontal-gaze-nystagmus ("HGN") test while at the hospital, which he failed. The result of his blood-alcohol test was .189, more than twice the legal limit.

{¶ 6} On December 8, 2003, appellant filed a complaint in the trial court against appellee and also against Veterans of Foreign Wars of the United States ("VFWUS"), Demidovich, and the Slovenian Club.

{¶ 7} On February 6, 2004, Demidovich pleaded guilty to aggravated vehicular homicide while driving under the influence of alcohol, aggravated vehicular assault while driving under the influence of alcohol, and failure to stop after an accident. He was found guilty of these offenses and sentenced to prison. On or

about September 9, 2004, appellant settled and dismissed his claim against Demidovich.

{¶ 8} On March 21, 2005, VFWUS filed a motion for summary judgment, challenging appellant's respondeat-superior theory. On March 14, 2006, appellant filed a brief in opposition. On June 2, 2006, the trial court granted VFWUS's summary-judgment motion. Thereafter, appellant moved for an order dismissing the Slovenian Club as a party, and on January 10, 2007, the court granted the motion, leaving VFW as the sole remaining defendant.

{¶ 9} Appellant asserted a wrongful-death action against VFW under a negligence theory and under Ohio's Dram Shop Act, R.C. 4301.22. On June 10, 2008, VFW filed a motion to dismiss appellant's negligence claim and a motion for summary judgment on his Dram Shop Act claim. Appellant filed his opposition on July 3, 2008. On September 25, 2008, the trial court dismissed appellant's negligence claim, finding that, in general, Ohio does not recognize such an action against a liquor-permit holder. However, the court found that genuine issues of material fact existed on appellant's statutory Dram Shop Act claim and denied the VFW's motion for summary judgment on that claim.

{¶ 10} Thereafter, appellant and the VFW moved the trial court to reconsider and rule on the constitutionality of the Dram Shop Act as written at the time of Kyrsten's death, April 4, 2003. Appellant argued that because the statute provided for civil liability against a bar owner who sells intoxicating liquor to one who habitually drinks intoxicating liquor to excess, but not to one who habitually drinks beer to excess, his equal-protection rights were violated.

{¶ 11} In its judgment of December 2, 2008, the trial court first reaffirmed its previous dismissal of appellant's negligence claim. Further, the trial court granted the VFW's summary-judgment motion on appellant's Dram Shop Act claim. The court found that the distinction drawn in the act was related to the state's legitimate interest in regulating the sale of intoxicating liquor and that the statute as it was then written did not violate equal protection. The court found that Demidovich was a habitual drinker of beer to excess, but not a habitual drinker of intoxicating liquor to excess.

{¶ 12} Appellant appeals the trial court's December 2, 2008 summary judgment in favor of the VFW on his statutory claim. He asserts the following for his sole assignment of error:

{¶ 13} "The trial court erred when it ruled that the plain language of the Dram Shop Act did not violate the United States and Ohio Constitutions."

{¶ 14} A trial court's decision to grant a motion for summary judgment is reviewed by an appellate court under a de novo standard of review. *Duncan v. Hallrich, Inc.*, 11th Dist. No. 2006–G–2703, 2007-Ohio-3021, 2007 WL 1732287, at

¶ 10, citing *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Under this standard, the appellate court applies the same standard used by the trial court. *Henson v. Cleveland Steel Container Corp.*, 11th Dist. No. 2008–P–0053, 2009-Ohio-180, 2009 WL 118959, at ¶ 50, citing *McKay v. Cutlip* (1992), 80 Ohio App.3d 487, 491, 609 N.E.2d 1272. A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153.

{¶ 15} Pursuant to Civ.R. 56(C), summary judgment is proper if (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

{¶ 16} The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the nonmoving party's claims. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. The movant must point to some evidence in the record of the type listed in Civ.R. 56(C) in support of his motion. Id. These evidentiary materials must show that there is no genuine issue as to any material fact. Id. A moving party does not discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmovant has no evidence to prove his case. Id. The assertion must be backed by evidence. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. Id. If this burden is satisfied, the nonmoving party has the burden, as set forth in Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Id.

{¶ 17} "At common law, one who was injured by the acts of an intoxicated person could not recover for such damage from the person who sold an intoxicating beverage to the intoxicated person. *Settlemyer v. Wilmington Veterans Post No. 49* (1984), 11 Ohio St.3d 123, 125[, 11 OBR 421, 464 N.E.2d 521] and *Mason v. Roberts* (1973), 33 Ohio St.2d 29, 33[, 62 O.O.2d 346, 294 N.E.2d 884]. The law presumed that the proximate cause of injury was the consumption of the alcohol, not the sale. *Mason v. Roberts*, supra. * * * [T]he common law recognized two exceptions to the common law rule: (1) where the seller knew the purchaser could not refrain from drinking and (2) where the sale violated a statute." *Brown v. Hyatt–Allen Am. Legion Post No. 538* (Nov. 9, 1990), 6th Dist. No. L–89–336, 1990 WL 174317, *3.

{¶ 18} At the time of appellant's loss, R.C. 4399.18 provided:

{¶ 19} "A person has a cause of action against a liquor permit holder * * * for injury, death, or loss to person or property caused by the negligent actions * * * of an intoxicated person occurring off the premises of the liquor permit holder * * * only when both of the following can be shown by a preponderance of the evidence:

{¶ 20} "(A) The liquor permit holder * * * knowingly sold an intoxicating beverage to at least one of the following:

{¶ 21} "(1) A noticeably intoxicated person in violation of Division (B) of Sec. 4301.22 of the Revised Code [an intoxicated person];

{¶ 22} "(2) A person in violation of Division (C) of Sec. 4301.22 of the Revised Code [one who habitually drinks intoxicating liquor to excess]; * * *

{¶ 23} "(B) The person's intoxication proximately caused * * * the injury, death or loss to person or property."

{¶ 24} We note that in 2004, Division (C) of R.C. 4301.22, which prohibited the sale of intoxicating liquor to one who habitually drinks intoxicating liquor to excess, was deleted.

{¶ 25} In addition to appellant's claim under R.C. 4399.18(A)(2), i.e., that the VFW sold an intoxicating beverage to one who habitually drinks intoxicating liquor to excess, appellant also alleged in his complaint that the VFW violated R.C. 4399.18(A)(1) by knowingly selling beer to Demidovich, a noticeably intoxicated person. Appellant's allegation that the VFW was "grossly negligent, reckless and wanton in allowing an intoxicated person to continue to consume alcohol on its premises" was incorporated into his Dram Shop Act claim. However, in the VFW's motion for summary judgment, while it conceded that appellant had alleged a claim under R.C. 4399.18(A)(1), it did not cite those portions of the record demonstrating the lack of a genuine issue of material fact concerning this claim. This was apparently due to appellant's reliance on R.C. 4399.18(A)(2). In any event, because the VFW did not demonstrate by reference to the record the lack of a fact issue on appellant's claim under R.C. 4399.18(A)(1) in its motion for summary judgment, the duty to present countervailing evidence demonstrating a fact issue never shifted to appellant. *Dresher*, 75 Ohio St.3d 280, 662 N.E.2d 264. Accordingly, the VFW was not entitled to summary judgment on this claim.

{¶ 26} In its summary-judgment motion, the VFW argued that in its view, appellant would not be able to prove that it knowingly sold an intoxicating beverage to a noticeably intoxicated Demidovich. However, in cases decided under former R.C. 4399.18(A)(1), or its equivalent standard, the Ohio Supreme Court and Ohio appellate districts have held that the element of "knowingly" in

the statute can be proven by circumstantial evidence. In *Gressman v. McClain* (1988), 40 Ohio St.3d 359, 533 N.E.2d 732, the Supreme Court of Ohio construed the term "knowingly" to mean the knowledge of an existing condition that is imputed from a personal relationship to the condition where one's association with it, his control over it, or his direction of it are such as to give him actual personal information concerning it. Id. at 363, 533 N.E.2d 732.

{¶ 27} In *Harris v. Pallone Mgt., Inc.* (1990), 70 Ohio App.3d 207, 590 N.E.2d 874, the plaintiff, William Harris, consumed 15 beers before entering the defendant's nightclub, and consumed four more drinks while there, one of which he purchased himself. The court noted that the nightclub's employees thus had at least one opportunity to observe the plaintiff while he was purchasing a drink. After leaving the club, he was involved in a motor-vehicle accident in which he was injured. He subsequently sued the nightclub, alleging that the defendant violated R.C. 4399.18(A)(1) by serving alcohol to a noticeably intoxicated person. The trial court granted summary judgment, finding that the evidence failed to create a genuine issue of fact as to the defendant's knowledge that the plaintiff was intoxicated. In reversing the trial court's summary judgment, the Tenth Appellate District held:

{¶ 28} "Accordingly, to satisfy their burden under Civ.R. 56, defendants were required to establish from the evidence in the record that no question of fact existed with respect to their knowledge of William's inebriated condition * * *. * * * [D]efendants pointed to William's deposition testimony in which William stated that he did not verbally acknowledge to any of defendants' employees that he was intoxicated * * * and that he did not inform the person from whom he purchased the drink that he was intoxicated. Defendants also pointed to William's statements that he could not remember * * * whether he was staggering * * * while on the premises of defendants.

{¶ 29} " * * *

{¶ 30} "[A] genuine issue of fact remains as to defendants' knowledge of William's inebriated state. Construing the evidence most favorably to plaintiffs, the record indicates that William consumed approximately fifteen beers before entering defendants' establishment and that he consumed an additional four alcoholic beverages while in the bar. Defendants' employees * * * had at least one opportunity to observe William while he was purchasing a drink. In light of this evidence, a reasonable inference can be drawn under the holding of *Gressman,* [40 Ohio St.3d 359, 533 N.E.2d 732], that defendants knew William was intoxicated. As noted above, knowledge can be gained in a variety of methods, and William's failure to inform defendants of * * * his * * * inebriated state does not satisfy defendants' burden under Civ.R. 56 to affirmatively demonstrate

that no genuine issue of fact remains as to their knowledge of [his] condition." (Emphasis deleted.) *Harris,* 70 Ohio App.3d at 210–211, 590 N.E.2d 874.

{¶ 31} In *Bickel v. Moyer* (Sept. 29, 1994), 3d Dist. No. 5–94–14, 1994 WL 530685, the Third Appellate District held:

{¶ 32} "Moreover, it is logical to presume that a liquor permit holder, or its employee(s), may never make the admission that they continued to serve a person after that person exhibited signs of intoxication. For a liquor permit holder to make such an admission would be to concede liability on his behalf. Thus, the only way for a third party injured by an intoxicated person to substantiate his claim against the liquor permit holder would be by use of circumstantial evidence." Id. at *3.

{¶ 33} In *Bickel,* the customer consumed beer at the defendant's bar. Later, the customer drove a car off the road, injuring himself and fatally injuring his friend. The Third District held that the intoxicated patron's statement that he was staggering and the bar owner's statement denying that claim created a genuine issue of material fact concerning whether the bar owners had actual notice that the customer was intoxicated.

{¶ 34} In the case sub judice, although the burden never shifted to appellant to demonstrate the existence of a genuine issue of material fact on the issue of the VFW's knowledge of Demidovich's intoxication, we note that the record contains circumstantial evidence on this issue. Prior to arriving at the VFW bar, Demidovich consumed four beers. Thereafter, he consumed some nine additional beers at the VFW. He was served at least two beers by the VFW's barmaid, Nancy Higgins. He purchased about seven more beers from other VFW employees. Another barmaid also saw Demidovich at the bar later that evening. The VFW's employees thus had multiple opportunities to observe Demidovich while he was at the VFW bar. Demidovich was seated at the bar for an extended period, and he consumed at least two beers while sitting at the bar. Significantly, Demidovich was a regular at the VFW and admitted to consuming about eight beers per day. The record reveals that one patron of the VFW that night told police that Demidovich appeared to be intoxicated. Demidovich had been going to the VFW bar almost daily for some ten years.

{¶ 35} Further, when Demidovich was arrested that evening shortly after the fatal crash, he denied being involved in a crash, his speech was slurred, he was extremely unsteady, the odor of an alcoholic beverage was coming from him, and his eyes were bloodshot and glassy. Moreover, his alcohol-test result was .189, more than twice the legal limit.

{¶ 36} Demidovich stated in a deposition that he had two shots of vodka after he arrived at his mobile home. Construing this contention in a light most

favorable to appellant, such testimony is self-serving and contradicted by other evidence in the record. Neither the police nor appellant's girlfriend saw any alcohol in Demidovich's mobile home that night. In any event, whether Demidovich's testimony in this regard is credible is a jury question. Based upon the foregoing evidence, genuine issues of material fact exist on appellant's claim under R.C. 4399.18(A)(1).

{¶ 37} The trial court initially ruled in its September 25, 2008 judgment entry that genuine issues of material fact remained for trial. As outlined above, circumstantial evidence can be used to prove that a liquor permit holder, such as the VFW, knowingly sold an intoxicating beverage to a noticeably intoxicated person, pursuant to R.C. 4399.18(A)(1). Although the parties insisted that the court reconsider and rule on the constitutionality of R.C. 4399.18(A)(2), the trial court had already determined that a genuine issue of material fact remained for trial on appellant's Dram Shop Act claim.

{¶ 38} The VFW argues that because appellant's claim under R.C. 4399.18(A)(1) was not assigned as error, appellant has waived it. However, as discussed above, there is evidence in the record to withstand summary judgment on this issue. Under our de novo standard of review, we have the authority to determine any issue we identify in the record. In *State v. Peagler* (1996), 76 Ohio St.3d 496, 668 N.E.2d 489, the Supreme Court of Ohio held: "[App.R. 12(A)(2)] allows a court of appeals discretion in deciding to address an issue not briefed or raised below * * *." Id. at 499, 668 N.E.2d 489. This court adopted this holding in *State v. Blackburn*, 11th Dist. No. 2001–T–0052, 2003-Ohio-605, 2003 WL 261756, at ¶ 45. However, in fairness to the VFW, it should not have to defend claims that have not been presented. This court resolved this problem by allowing the parties to brief the issue and argue it to the court. As a result, we are able to consider the merits of appellant's R.C. 4399.18(A)(1) claim with no prejudice to either party, and hereby do so.

{¶ 39} Based on our review of the record, we hold that genuine issues of material fact exist on appellant's claim under R.C. 4399.18(A)(1) for the jury to resolve and that the trial court erred in granting summary judgment to the VFW on this claim.

{¶ 40} Turning now to appellant's assignment of error, we note that "[t]he Ohio Dram Shop Act, R.C. 4399.18, embodies [the] general, common-law rule that a person * * * may not maintain a cause of action against a liquor permit holder for injury resulting from the acts of an intoxicated person. The statute creates a narrow exception, however, to the basic premise of non-liability by providing that 'a person' has a cause of action against a permit holder * * * for off-premises injury caused by an 'intoxicated person' 'only when' certain criteria are met.

R.C. 4399.18." (Emphasis deleted.) *Klever v. Canton Sachsenheim, Inc.* (1999), 86 Ohio St.3d 419, 421, 715 N.E.2d 536.

{¶ 41} Further, "[s]ince 1986 it has been held that the General Assembly clearly intended that [R.C. 4399.01 and 4399.18 provide the exclusive remedies] against liquor permit holders * * * for the negligent acts of intoxicated patrons * * *." *Cummins v. Rubio* (1993), 87 Ohio App.3d 516, 521, 622 N.E.2d 700.

{¶ 42} In order to maintain a claim under R.C. 4399.18(A)(2), appellant was required to prove that the VFW knowingly sold Demidovich an intoxicating beverage and that Demidovich habitually drinks intoxicating liquor to excess. R.C. 4301.01(A)(1) defines "intoxicating liquor" as "all liquids and compounds, *other than beer* * * *, containing one-half of one per cent or more of alcohol by volume which are fit to use for beverage purposes, from whatever source and by whatever process produced." (Emphasis added.)

{¶ 43} Thus, pursuant to R.C. 4399.18(A)(2), a liquor permit holder is liable for injuries or death caused by the negligence of an intoxicated patron off-premises if the permit holder knowingly sold an intoxicating beverage to a patron who habitually drinks intoxicating liquor to excess. However, because intoxicating liquor does not include beer, that liability does not arise when the permit holder sells an intoxicating beverage to someone who habitually drinks beer to excess. It is this distinction that forms the basis of appellant's equal-protection challenge.

{¶ 44} "An enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible." *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus. "That presumption of validity of such legislative enactment cannot be overcome unless it appear[s] that there is a clear conflict between the legislation in question and some particular provision or provisions of the constitution." *Xenia v. Schmidt* (1920), 101 Ohio St. 437, 130 N.E. 24, paragraph two of the syllabus; *State ex rel. Durbin v. Smith* (1921) 102 Ohio St. 591, 600–601, 133 N.E. 457; *Dickman* at 147, 57 O.O. 134, 128 N.E.2d 59. Moreover, the burden of proving the unconstitutionality of a statute rests upon the party challenging its validity. *State v. Thompkins* (1996), 75 Ohio St.3d 558, 560, 664 N.E.2d 926; *Woods v. Telb* (2000), 89 Ohio St.3d 504, 511, 733 N.E.2d 1103. Accordingly, we begin our analysis with the strong presumption that R.C. 4399.18(A)(2) is constitutional.

{¶ 45} The Fourteenth Amendment to the United States Constitution provides that "[no] State shall * * * deny to any person within its jurisdiction the equal protection of the laws." The limitations placed on governmental action by the Equal Protection Clauses of the Ohio and federal Constitutions are essentially

identical. *Kinney v. Kaiser Aluminum & Chem. Corp.* (1975), 41 Ohio St.2d 120, 123, 70 O.O.2d 206, 322 N.E.2d 880.

{¶ 46} It is fundamental that legislation cannot be attacked merely because it creates distinctions and thereby classifies the subjects of a law, because legislation, by its very nature, treats people by groups and classes and must, of necessity, draw its lines based upon "amalgamations of factors." *Vance v. Bradley* (1979), 440 U.S. 93, 109, 99 S.Ct. 939, 59 L.Ed.2d 171.

{¶ 47} Further, absent the denial of a fundamental right or a situation in which the law negatively impacts a suspect class, a legislative classification will be upheld if it is rational. Id.; *Williamson v. Lee Optical* (1955), 348 U.S. 483, 488, 75 S.Ct. 461, 99 L.Ed. 563. The parties agree that the rational-basis test is applicable to determine whether the Dram Shop Act violates equal protection. Pursuant to this test, a statute will be held to be constitutional if it is rationally related to any legitimate state interest. *Cleburne, Texas v. Cleburne Living Ctr.* (1985), 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313. Enactments of the General Assembly are valid if "they bear a real and substantial relation to the object sought to be obtained, namely, the health, safety, morals or general welfare of the public, and are not arbitrary, discriminatory, capricious or unreasonable. * * * The federal test is similar. To determine whether such statutes are constitutional under federal scrutiny, we must decide if there is a rational relationship between the statute and its purpose." *Thompkins,* 75 Ohio St.3d 558, 664 N.E.2d 926. In *Chicago Police Dept. v. Mosley* (1972), 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212, the Supreme Court held: "As in all equal protection cases, * * * the crucial question is whether there is an appropriate governmental interest suitably furthered by the differential treatment." Id. at 95, 92 S.Ct. 2286, 33 L.Ed.2d 212.

{¶ 48} In applying the rational-basis test, a court will not overturn a statute "unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes" that the court can only conclude that the legislature's actions were irrational. *Vance,* 440 U.S. at 97, 99 S.Ct. 939, 59 L.Ed.2d 171.

{¶ 49} Appellant argues that because the statute provides a civil remedy to persons damaged as a result of an intoxicated patron who habitually drinks intoxicating liquor to excess as opposed to an intoxicated patron who habitually drinks beer to excess, his equal-protection rights have been violated. We must therefore determine whether this statutory distinction bears a rational relationship to the achievement of a legitimate governmental purpose.

{¶ 50} The purpose of the Dram Shop Act was to protect the health, safety, and welfare of the people of this state and to promote temperance in the consumption of alcoholic liquors by sound and careful control and regulation of their manufacture, sale, and distribution. *Mason,* 33 Ohio St.2d at 31, 62 O.O.2d 346, 294 N.E.2d 884. Thus, the state has a legitimate interest in the sale and distribution of intoxicating liquors.

{¶ 51} We note that the General Assembly has historically treated beer and intoxicating or "hard" liquor differently. For example, former G.C. 6064–22 prohibited the sale of beer to any person under 18 years of age, but prohibited the sale of intoxicating liquor to anyone under 21 years of age. *Akron v. Scalera* (1939), 135 Ohio St. 65, 67, 13 O.O. 376, 19 N.E.2d 279. Further, that same statute prohibited the sale of intoxicating liquor after 2:30 a.m. on Sunday but did not prohibit such sales involving beer. Id. Moreover, beer is less intoxicating than hard liquor, according to alcohol by weight. Under the former statute, beer included all beverages containing one-half of one per cent but not more than 3.2 per cent of alcohol by weight, while intoxicating liquor included any liquid and compounds containing more than 3.2 per cent of alcohol by weight. Id. at 66–67, 13 O.O. 376, 19 N.E.2d 279.

{¶ 52} With this distinction in mind, the legislature imposed civil liability on one who sells an intoxicating beverage to a habitual drinker of intoxicating liquor to excess as opposed to one who habitually drinks beer to excess.

{¶ 53} Thus, in applying the rational-basis test, in light of the foregoing differences between beer and intoxicating liquor, we cannot say that the distinction in former R.C. 4301.22(C) between habitual drinkers of intoxicating liquor and habitual drinkers of beer is so unrelated to the purpose of Ohio's Dram Shop Act that it renders the statute unconstitutional. Nor can we say that in light of those differences, the former statute is not rationally related to the legitimate state interest in protecting the public from hard liquor as opposed to beer.

{¶ 54} While there is evidence in the record that Demidovich was a habitual drinker of beer to excess, there is no evidence that he habitually drank intoxicating liquor to excess.

{¶ 55} We therefore hold that the trial court did not err in finding former R.C. 4301.22(C) to be constitutional and in entering summary judgment in favor of the VFW on appellant's Dram Shop Act claim under R.C. 4399.18(A)(2).

{¶ 56} For the reasons stated in the opinion of this court, it is the judgment and order of this court that the judgment of the Trumbull County Court of

Common Pleas is affirmed in part and reversed in part, and the matter is remanded to the trial court for further proceedings consistent with this opinion.

Judgment affirmed in part
and reversed in part,
and cause remanded.

CANNON, J., concurs.

O'TOOLE, J., dissents.

COLLEEN MARY O'TOOLE, Judge, dissenting.

{¶ 57} I respectfully dissent.

{¶ 58} As the majority notes, Ohio's appellate courts are empowered to dispose of cases on an issue not originally raised by the parties but which an appellate court finds in the record, following briefing. *Peagler*, 76 Ohio St.3d at 499, 668 N.E.2d 489. However, "[a] court of appeals cannot consider the issue for the first time without the trial court having had an opportunity to address the issue." Id. at 501, 668 N.E.2d 489. I believe that the majority is violating this principle.

{¶ 59} As the majority correctly finds, appellant sufficiently stated a claim in his complaint and amended complaint that VFW Post 3767 had violated former R.C. 4399.18(A)(1) by selling an intoxicating beverage to an intoxicated person. The majority asserts that the VFW failed to challenge this claim under Civ.R. 56 by pointing to those portions of the record before the trial court negating it, and, consequently, reverses on the basis that this claim remains pending.

{¶ 60} I must agree with VFW Post 3767 that the record indicates that appellant abandoned his claim under R.C. 4399.18(A)(1) in the trial court. The memoranda filed below show this. Ultimately, the only issues presented to the trial court for decision concerned the validity of appellant's R.C. 4399.18(A)(2) claim — i.e., whether the VFW had furnished intoxicating beverages to a person who habitually drinks intoxicating liquor to excess. That this was the only issue finally presented by the parties to the trial court is bolstered by the fact that it was the only issue presented by appellant on appeal. *This* court ordered the parties to brief whether appellant's R.C. 4399.18(A)(1) claim remained valid.

{¶ 61} While we may have a duty to request briefing and argument on issues evident in the record, but differing from those on which a trial court based its judgment, we should not scour the record for evidence or arguments to support one party's position. We should not resurrect on appeal claims abandoned before the trial court, upon which it never had a chance to rule. By doing so, we veer

perilously close to abandoning our position as neutral judges and becoming advocates.

{¶ 62} I would affirm the judgment of the trial court.