## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2012-NMSC-004

Filing Date: February 22, 2012

Docket No. 32,436

ESTATE OF DANIEL RALPH GUTIERREZ, by and through
his personal representative, JANET JARAMILLO, individually
and as next friend of SAGE G., JORDAN G., and NOAH G.,

      Plaintiffs-Petitioners,

v.

METEOR MONUMENT, L.L.C. d/b/a ALAMEDA METEOR,

      Defendant-Respondent.

ORIGINAL PROCEEDING ON CERTIORARI
Timothy L. Garcia, District Judge

Law Offices of Jane B. Yohalem
Jane B. Yohalem
Santa Fe, NM

Vigil Law Firm, P.A.
Jacob G. Vigil
Albuquerque, NM

for Petitioners

Domenici Law Firm, P.C.
Pete V. Domenici, Jr.
Lorraine Hollingsworth
Albuquerque, NM

for Respondent

## OPINION

**CHÁVEZ, Justice.**

1

**{1}** On August 31, 2003, while driving at approximately 7:00 p.m., Defendant Dean Durand crashed his Ford Bronco into a motorcycle driven by Daniel Gutierrez, ultimately resulting in Gutierrez's death. Durand admitted that earlier in the afternoon and up until 6:00 p.m., while at the business establishment operated by Defendant Meteor Monument, L.L.C., he had consumed seven twelve-ounce cans of beer and a twenty-four-ounce can of malt liquor, which has a higher alcohol content. He also testified that he consumed three ounces of malt liquor after 6:00 p.m. and ingested heroin and crack cocaine shortly before the accident. Approximately three and one-half hours after the accident, Durand's blood alcohol level was recorded at 0.09 gms/100 ml.

**{2}** Gutierrez's estate and family successfully sued both Durand and Meteor for Gutierrez's wrongful death. Only the verdict against Meteor is at issue in this appeal. The causes of action against Meteor were four-fold: (1) that Meteor was liable under the Alcohol Licensees Liability Act, also known as the New Mexico Dram Shop Liability Act (Dram Shop Liability Act), NMSA 1978, § 41-11-1 (1986), for serving alcohol to Durand when it was reasonably apparent that he was intoxicated; (2) that Meteor was negligent in hiring, supervising, and retaining Durand, knowing that he was an alcoholic and permitting him to consume alcohol in excess while working for Meteor ("negligent supervision"); (3) that Meteor was vicariously liable for the negligence of its employees; and (4) that Meteor's conduct was so egregious that it was liable for punitive damages under the dram shop and employment causes of action.

**{3}** Meteor appealed to the Court of Appeals, raising five issues. First, Meteor contended that the evidence was insufficient to support a verdict on the dram shop liability cause of action because there was no evidence that identified which Meteor employee served Durand, nor was there any evidence from which the jury could find that Durand's intoxication was reasonably apparent to that server. Second, Meteor claimed as a matter of law that it could not be vicariously liable for Durand's actions because there was no evidence that Durand was in the scope of his employment at the time of the accident. Third, Meteor contended it did not have notice that the negligent supervision claim included Durand as one of its employees. Fourth, Meteor argued that the scope of employment instruction given by the trial court at the request of both parties was erroneous because the instruction inappropriately conflated vicarious liability and the negligent supervision causes of action. Fifth, Meteor contended that the evidence was insufficient to support a punitive damages verdict against it. *Estate of Gutierrez ex rel. Jaramillo v. Meteor Monument, LLC*, No. 28,799, slip op. at 1 (N.M. Ct. App. May 18, 2010).

**{4}** The Court of Appeals reversed the dram shop liability verdict and remanded the negligent supervision verdict for a new trial, and therefore it did not address the punitive damages claim. Slip op. at 19. Regarding the dram shop claim, the Court of Appeals concluded as a matter of law that the evidence was insufficient to support a finding that it was reasonably apparent to Meteor that Durand was intoxicated at the time he was sold alcohol because there was no evidence in the record identifying who sold Durand the alcohol. Slip op. at 17. Regarding the employment claims, the Court of Appeals agreed with

2

Gutierrez that "employer vicarious liability was not argued" to the jury, slip op. at 8, nor could it have been, because the facts did not support a finding that Durand was acting in the course and scope of his employment at the time of the accident, slip op. at 9. This holding has not been challenged. However, with respect to the negligent supervision claim, the Court of Appeals concluded that Gutierrez did not include a claim for negligent supervision of Durand in his complaint, nor was such a claim clearly argued at trial, slip op. at 8, although the claim "was clearly contemplated by Plaintiffs and the court throughout the course of the trial," slip op at 12. In addition, the Court of Appeals concluded that scope of employment was not at issue in the negligent supervision claim. Slip op. at 13-14. Therefore, the Court determined that the jury was unable to decide the actual issues before it (1) because the jury was given a scope of employment instruction, (2) because of the confused fashion in which the case was argued, and (3) because in answering two jury questions, the trial court advised the jury that to hold Meteor liable, it must find that Durand was in the scope of his employment. Slip op. at 14. This confusion and uncertainty resulted in the Court of Appeals remanding the negligent supervision claim for a new trial, and therefore it did not reach the punitive damages issue. Slip op. at 15. Meteor did not cross-appeal.

**{5}**     After granting Gutierrez's petition for writ of certiorari regarding the dram shop claim, we conclude that (1) identification of the server was not essential, and (2) the circumstantial evidence in this case was sufficient for a jury to find that it was reasonably apparent to Meteor that Durand was intoxicated at the time he was last served alcohol. Regarding the negligent supervision claim, although the pleadings in this case are not a model of clarity, the trial court did not err in holding that Meteor was on notice that the negligent supervision claim included Durand as an employee. In addition, scope of employment may be a factor in a negligent supervision claim; both Gutierrez and Meteor requested a scope of employment instruction and agreed with the trial court's answers to the jury questions regarding that instruction. As a result, this error was invited, and the trial court did not abuse its discretion in rejecting Meteor's motion for a new trial. We therefore reverse the Court of Appeals and remand to that Court to address the issue regarding punitive damages.

## I.     PLAINTIFFS PRESENTED ENOUGH EVIDENCE UNDER THE DRAM SHOP LIABILITY ACT FOR THE JURY TO REASONABLY FIND THAT IT WAS "REASONABLY APPARENT" TO DURAND'S SERVER THAT DURAND WAS INTOXICATED AT THE TIME OF SERVICE.

**{6}**     To establish a defendant's liability under the New Mexico Dram Shop Liability Act, a plaintiff must prove that the defendant licensee "(1) sold or served alcohol to a person who was intoxicated; (2) it was reasonably apparent to the licensee that the [patron] . . . was intoxicated; and (3) the licensee knew from the circumstances that the [patron] . . . was intoxicated." Section 41-11-1(A). The issue before us is whether, after viewing the evidence in the light most favorable to the jury verdict, we are convinced that the verdict cannot be sustained either by the evidence or reasonable inferences therefrom. *Gonzales v.*

*New Mexico Dep't of Health*, 2000-NMSC-029, ¶ 18, 129 N.M. 586, 11 P.3d 550.

**{7}**     Meteor contends that there is no evidence to support a finding that it was reasonably apparent to its employee-server that Durand was intoxicated at the time he was served. The Court of Appeals agreed. *Gutierrez*, No. 28,799, slip op. at 17. Initially the Court of Appeals acknowledged that a reasonable jury could find that Meteor's employees sold alcohol to Durand when Durand was intoxicated, and based on both the circumstances and Durand's history of alcoholism, it was reasonably apparent to Meteor's employees at the time they sold alcohol to Durand that he was intoxicated. Slip op. at 16. However, despite this acknowledgment, the Court of Appeals, applying a de novo standard of review, slip op. at 7, reversed the district court because "there [was] no evidence in the record regarding who sold the alcohol to Durand and, therefore, no evidence to support a finding that [Meteor] knew that Durand was drunk based on what was reasonably apparent." Slip op. at 17.

**{8}**     We disagree with the Court of Appeals that the identity of the server who actually sold or served alcohol to a patron is a prerequisite to proving dram shop liability. In *Plummer v. Devore*, 114 N.M. 243, 247, 836 P.2d 1264, 1268 (Ct. App. 1992), *overruled on other grounds by State v. Martinez*, 2007-NMSC-025, ¶ 21, 141 N.M. 713, 160 P.3d 894, the Court of Appeals found sufficient evidence to support liability in a dram shop case without looking to the identity of the server. There are two reasons why evidence of who actually served the patron is immaterial: (1) the reasonably-apparent prong is based on an objective standard—not what the actual server subjectively perceived about the patron's level of intoxication; and (2) circumstantial evidence can support a finding of what should have been reasonably apparent to a server regarding whether the patron was intoxicated at the time he or she was served alcohol.

A.     THE "REASONABLY-APPARENT" PRONG CREATES AN OBJECTIVE STANDARD.

**{9}**     We have consistently interpreted legislation using the adverb "reasonably" as imposing an objective standard. In *State v. Rudolfo*, 2008-NMSC-036, ¶ 17, 144 N.M. 305, 187 P.3d 170, we interpreted an "acted reasonably" requirement for self-defense as an objective, rather than subjective, element. Similarly, in *Shull v. New Mexico Potash Corp.*, 111 N.M. 132, 134, 802 P.2d 641, 643 (1990), we contrasted the subjective "good faith" standard with the objective "reasonable" standard. *Accord Kestenbaum v. Pennzoil Co.*, 108 N.M. 20, 27-28, 766 P.2d 280, 287-88 (1988) (same). As we explained in *Rudolfo*, 2008-NMSC-036, ¶ 17 (internal quotation marks and citation omitted), "the ['acted reasonably'] requirement is objective in that it focuses on the hypothetical behavior of a reasonable person acting under the same circumstances as the defendant." In *Plummer*, the Court of Appeals applied an objective standard to the reasonably-apparent prong when it concluded that the evidence was sufficient to support a finding that the server, who was unidentified, "knew or should have known" that the patron was intoxicated at the time the patron was sold alcohol. 114 N.M. at 247, 836 P.2d at 1268.

4

**{10}** Our interpretation of the reasonably-apparent prong as creating an objective standard is in accord with how other jurisdictions have interpreted similar dram shop act language. In *Becks v. Pierce*, 638 S.E.2d 390 (Ga. Ct. App. 2006), the Georgia Court of Appeals recognized that its dram shop act holds servers liable "if a provider in the exercise of reasonable care should have known" that the patron was intoxicated. *Id.* at 393 (internal quotation marks and citation omitted). In *Hutchens v. Hankins*, 303 S.E.2d 584 (N.C. Ct. App. 1983), the North Carolina Court of Appeals interpreted its dram shop act to impose liability where the server "knew or should have known that the patron was in an intoxicated condition at the time he or she was served." *Id.* at 594-95. In *Perseus, Inc. v. Canody*, 995 S.W.2d 202, 206-07 (Tex. App. 1999), the Texas Court of Appeals implicitly read its statute's "apparent to the provider" requirement to create an objective test. The *Perseus* court defined "apparent," a term also used in our Dram Shop Liability Act, as "[t]hat which is obvious, evident, or manifest; what appears, or has been made manifest. That which appears to the eye or mind; open to view; plain; patent." *Id.* at 206 (quoting *Black's Law Dictionary* 88 (5th ed. 1979) (internal quotation marks omitted)). The court reasoned that "[i]t is not the actual observation of conduct that makes the conduct 'apparent.' Rather, conduct is apparent when it is visible, evident, and easily observed." *Id.* at 206. The court therefore concluded that the "apparent" language indicated an objective standard. *Id.*

**{11}** The *Perseus* court explained its rationale for applying an objective standard, as follows:

> Were we to construe the statutory "apparent to the provider" requirement [to be subjective], then a provider of alcohol could always escape liability by merely turning a blind eye to signs of intoxication that are plain, manifest, and open to view. Surely this is not what the Legislature intended when it enacted legislation to hold providers responsible when they serve obviously intoxicated individuals.

*Id.* The Georgia Supreme Court echoed this same concern in *Riley v. H & H Operations, Inc.*, 436 S.E.2d 659, 661 (Ga. 1993), reasoning that "a construction of [its dram shop act] requiring *actual* knowledge would render the Act an ineffective sanction, since only when the defendant admitted its own knowledge could the plaintiff prevail."

**{12}** Similarly, in *Miller v. Ochampaugh*, 477 N.W.2d 105, 109 (Mich. Ct. App. 1991), the Michigan Court of Appeals held that Michigan's dram shop act requirement that the intoxication be "apparent to an ordinary observer" was an objective standard. The court reasoned, "had the Legislature wished to create a subjective standard, it could have worded the dramshop act accordingly." *Id.* The *Miller* court also expressed concern that the "adoption of a subjective standard would essentially do away with the dramshop cause of action," noting that a defendant could escape liability if the serving employee simply testified that he or she did not personally observe the patron to be intoxicated. *Id.* We agree and are persuaded that, in New Mexico, the Legislature intended the reasonably-apparent prong to require an objective standard of proof.

5

B.     PLAINTIFFS MAY RELY ON CIRCUMSTANTIAL EVIDENCE OTHER THAN EVIDENCE AT THE TIME OF SERVICE TO PROVE WHAT WAS REASONABLY APPARENT TO THE SERVER.

**{13}**     Although Meteor acknowledges that circumstantial evidence may support a finding under the reasonably-apparent prong, it contends that the circumstantial evidence must be from witnesses who were present at the time of service. Meteor does not cite case law to support this argument; instead it advances a policy argument that "the use of circumstantial evidence could be stretched to the point that evidence that is remote in either time or place could be used to find a licensee liable." We disagree. Again, the Court of Appeals opinion in *Plummer* is instructive. In *Plummer*, the Court of Appeals found sufficient evidence to support a finding under the reasonably-apparent prong, despite the lack of evidence from witnesses who were present at the time the patron was served alcohol. 114 N.M. at 247, 836 P.2d at 1268. The evidence in *Plummer* consisted of testimony from the patron regarding the length of time he was present at the bar, the results of a Breathalyzer test, and expert testimony interpreting the results of the test. *Id.*

**{14}**     Other states with similar dram shop acts allow circumstantial evidence to be used to prove what the server should have known of the patron's intoxication. In *Kish v. Farley*, 24 A.D.3d 1198 (N.Y. App. Div. 2005), New York's intermediate appellate court explicitly addressed this issue. It stated that "visible intoxication may be established by circumstantial evidence," *id.* at 1200, and that no "direct proof in the form of testimonial evidence from someone who actually observed the allegedly intoxicated person's demeanor at the time and place that the alcohol was served" is required, *id.* (internal quotation marks and citation omitted). *See also Perseus*, 995 S.W.2d at 206-07 (holding that proof that the server actually witnessed the drunken behavior was not required).

**{15}**     Applying this principle, in *Cadillac Cowboy, Inc. v. Jackson*, 69 S.W.3d 383, 389-90 (Ark. 2002), the Arkansas Supreme Court found sufficient evidence that the patron was visibly intoxicated at the time of service, based on evidence that the patron consumed several beers before going to a club, followed by consuming at least one mixed drink at the club, combined with a police officer's testimony that the patron appeared intoxicated at the accident scene. Similarly, in *Studer v. Veterans of Foreign Wars Post 3767*, 925 N.E.2d 629, 637 (Ohio Ct. App. 2009), the Ohio Court of Appeals found a genuine issue of material fact as to what was apparent to the server based on several pieces of circumstantial evidence: the patron had consumed four beers before arriving at the serving bar; he had then consumed nine beers at the bar; he was a regular at the bar in question; bar employees had many chances to observe the patron at the bar; he appeared drunk at the time of his arrest shortly after the car accident following service; and he had a blood alcohol content well over the legal limit.

**{16}**     In permitting the plaintiff to rely on circumstantial evidence that the patron's intoxication was obvious at the time of service, the *Studer* court reasoned:

6

[I]t is logical to presume that a liquor permit holder, or its employee(s), may never make the admission that they continued to serve a person after that person exhibited signs of intoxication. For a liquor permit holder to make such an admission would be to concede liability on his behalf. Thus, the only way for a third party injured by an intoxicated person to substantiate his claim against the liquor permit holder would be by use of circumstantial evidence.

*Id.* at 636-37 (internal quotation marks and citation omitted). In summary, because the reasonably-apparent prong in the Dram Shop Liability Act is based on an objective standard, and because circumstantial evidence at a time other than the time of service may be sufficient to prove what a server should have known regarding the level of the patron's intoxication at the time the patron was served, the identity of the server is not essential. We next turn to the evidence in this case to determine whether the evidence was sufficient for the jury to find Meteor liable to Gutierrez under the Dram Shop Liability Act.

C.     PLAINTIFFS PRESENTED SUFFICIENT EVIDENCE UNDER THE "REASONABLY-APPARENT" PRONG.

**{17}**     In assessing the sufficiency of the evidence, we review for substantial evidence. *See Weststar Mortg. Corp. v. Jackson*, 2003-NMSC-002, ¶ 8, 133 N.M. 114, 61 P.3d 823. "In reviewing the jury verdict for substantial evidence, we examine the record for relevant evidence such that a reasonable mind might accept as adequate to support a conclusion," viewing the facts in the light most favorable to the verdict. *Nava v. City of Santa Fe*, 2004-NMSC-039, ¶ 10, 136 N.M. 647, 103 P.3d 571 (internal quotation marks and citations omitted).

**{18}**     Meteor contends that the only testimony regarding Durand's appearance at the time of sale was Durand's own testimony that he did not think he appeared drunk when he was last sold a beer by Meteor. Durand testified at his deposition that he was not intoxicated at the time Meteor employees sold him beer on the day of the accident, but later stipulated that he was intoxicated at the time Meteor employees sold him the beer that same day. He also testified that Meteor's employees knew that he was drinking while working on August 31, 2003, because sometimes one of the employees would ask him for a drink. Durand believed that he could not have appeared intoxicated, boasting that he could still walk straight, and that in the past he would drink 18-20 beers and then drive to buy more beer. However, other evidence at trial calls into question Durand's self-assessment.

**{19}**     The manager admitted that Durand's alcoholism was "pretty well-known" among Meteor employees. The manager also testified that Durand, a daily patron who also worked there, was usually visibly intoxicated by 3:00 p.m. Durand testified that the Meteor place of business is the only place he bought his beer. *See Studer*, 925 N.E.2d at 637 (noting that "[s]ignificantly, [the patron] was a regular at the . . . [bar] and admitted to consuming about eight beers per day"). Durand testified that the store's employees who were working on the

7

day of the accident knew that when he purchased beer he was working and that he had been drinking all day long, because they observed him doing so. *See Plummer*, 114 N.M. at 247, 836 P.2d at 1268 (relying in part on the length of time that the patron spent at the bar); *Studer*, 925 N.E.2d at 637 (finding relevant that the servers had plenty of opportunities to observe the patron while on the premises).

**{20}** Moreover, Durand admitted that he drank seven twelve-ounce cans of beer and one twenty-four-ounce can of malt liquor, which has a higher alcohol content than regular beer, while he was at the Meteor business establishment. *See Plummer*, 114 N.M. at 247, 836 P.2d at 1268 (relying in part on the quantity of alcohol that the patron had consumed before the relevant service). Approximately one hour after Durand left Meteor, he crashed into Gutierrez. Officer Richard Castillo, who investigated the accident, testified that Durand's appearance indicated that Durand was intoxicated. He further testified that Durand's speech was slurred and his eyes were bloodshot. When Officer Castillo administered field sobriety tests to Durand, Durand was unable to complete the tests as instructed. Durand swayed heavily from side to side and missed the tip of his nose when he was asked to touch it with his forefinger. *See Studer*, 925 N.E.2d at 637 (an officer's observation of the patron at the accident scene was relevant to the patron's drunken state at the earlier time of service). Five hours after the accident and six hours after he was sold his last beer by Meteor, Durand's blood alcohol level was 0.09 gms/100 ml. *See Plummer*, 114 N.M. at 247, 836 P.2d at 1268 (relying in part on the patron's blood alcohol level). All of this circumstantial evidence was sufficient to support a jury finding that Durand was intoxicated at the time Meteor employees sold him beer and that it was reasonably apparent that he was intoxicated. Although Durand attributed his dangerous driving and poor performance on field sobriety tests to his consumption of illegal drugs minutes before the accident, the jury was free to reject this testimony.

**II.     BECAUSE BOTH PARTIES REQUESTED INSTRUCTIONS ON SCOPE OF EMPLOYMENT AND AGREED WITH THE COURT'S ANSWERS TO JURY QUESTIONS REGARDING SCOPE OF EMPLOYMENT, FUNDAMENTAL ERROR DOES NOT WARRANT A REMAND FOR A NEW TRIAL.**

**{21}** The Court of Appeals remanded the negligent supervision claim for a new trial for three reasons. First, it was not clear in either the pleadings or during trial that Gutierrez contended that Meteor was negligent in hiring, supervising, and retaining Durand. *Gutierrez*, No. 28,799, slip op. at 8. Second, the Court of Appeals disagreed with the trial court that if the scope of employment instruction was given in error, it was not fundamental error. Slip op. at 14. Third, because scope of employment was not an issue in this case, the jury was misdirected. Slip op. at 14-15.

**{22}** The Court of Appeals recognized that Meteor never objected to either of these jury instructions or counsel's arguments. Slip op. at 10-11. However, the Court decided that these errors, in sum, "created an environment in which the jury would have been unable to

fairly determine the actual issues before it," and cited to a case reviewing unpreserved jury instruction error for fundamental error. Slip op. at 14.

**{23}** Gutierrez contends that the Court of Appeals was wrong to remand this case for a new trial under the fundamental error doctrine because this doctrine does not apply in civil cases and, in any event, because Meteor actively advocated for the instructions, there was no fundamental error. Meteor did not appeal the Court of Appeals' remand of the negligent supervision claim for a new trial. However, Meteor defends the Court of Appeals' remand, arguing that the Court did not rely on fundamental error because Meteor preserved all of the issues considered by the trial court, and the Court of Appeals was correct to conclude after a de novo review that the jury was confused or misdirected by the jury instruction on scope of employment. As part of this argument, Meteor contends that it did not have notice that Gutierrez alleged that Durand was one of the employees whom Meteor negligently supervised. *See Gutierrez*, No. 28,799, slip op. at 8, 10-12.

**{24}** Regarding the notice issue, we acknowledge that the pleadings in this case did not expressly list Durand as an employee whom Meteor negligently hired, supervised, or retained. In the pretrial order, which governed the proceedings, Gutierrez alleged that Meteor "negligently hired, trained, supervised, and retained [Nena] Brackeen, John Brackeen, and other employees and agents." Although it would have been a simple matter to name Durand as one of the "other employees," we agree with the trial court that the claim was "sufficiently pled [and] factually presented." The evidence during trial from witnesses and transcripts of depositions preserved for use during trial was primarily focused on Meteor's hiring and supervision of Durand. The evidence developed by Gutierrez was that the employees knew that Durand was an alcoholic, he consumed alcohol while performing work for Meteor, he was served alcohol while he worked, and he drove away from work after having consumed alcohol. Although the pleadings were imperfect, as was the trial of this case, Meteor had sufficient notice that Durand was the focus of Gutierrez's negligent supervision claim. In any event, Meteor has neither argued nor demonstrated any prejudice as a result of the negligent supervision claim being submitted to the jury. The trial court did not abuse its discretion when it allowed the claim of negligent supervision of Durand to go to the jury. *See Bellet v. Grynberg*, 114 N.M. 690, 692, 845 P.2d 784, 786 (1992) (no abuse of discretion in allowing a claim that was not well-pled unless the defendant did not have a fair opportunity to defend against the claim, creating prejudice).

**{25}** The more complicated issue concerns the scope of employment instruction that was given to the jury. Generally when a plaintiff seeks to hold an employer vicariously liable for the negligence of its employees, whether the employees' negligence occurred in the scope of their employment may be at issue. *Lessard v. Coronado Paint & Decorating Ctr., Inc.*, 2007-NMCA-122, ¶ 40, 142 N.M. 583, 168 P.3d 155. However, even when an employee is alleged to have negligently caused injury to a plaintiff outside the employee's scope of employment, scope of employment may still be a factor for the jury to consider under a negligent hiring, supervision, or retention claim. *Id.*

9

**{26}** In this case, Gutierrez and Meteor each prepared a scope of employment instruction to be submitted to the jury. While the parties and the trial court were settling the jury instruction on the negligent supervision claim, the trial judge suggested that the parties needed to define the employer-employee relationship in the body of the negligent supervision instruction. Meteor's attorney advised the trial court that he also wanted to define scope of employment for the jury at that point in the instructions.

**{27}** Gutierrez's attorney indicated that he had the scope of employment instruction in his package of proposed instructions. Meteor's attorney next persuaded the trial court to modify the scope of employment instruction to specify that "Defendant Dean Durand's acts of smoking crack cocaine and injecting heroin were not within the scope of his employment." However, this was not without objection from Gutierrez, who contended that the revision of the standard uniform jury instruction seems to "completely negate the idea that anything Dean Durand does would be within the scope of employment." Thus, Gutierrez suggested that if the language proposed by Meteor were added, the trial court should also add that "[d]rinking alcohol and being served alcohol is within the course and scope of employment." Meteor responded, "[w]ell, that's a fact issue for the jury." Although the parties did not describe for the trial court the specifics of why they wanted a scope of employment instruction, they both wanted the instruction. Meteor appeared to believe that the instruction was significant on the issue of Durand drinking on the job. As we have indicated, scope of employment may be a factor for the jury to consider in a negligent supervision case. *Lessard*, 2007-NMCA-122, ¶ 40. How the parties thought that scope of employment might be a factor for the jury was not revealed to the trial court, but what is clear is that both parties wanted a scope of employment instruction. The trial court rejected Gutierrez's scope of employment instruction by modifying it at Meteor's request.

**{28}** During its deliberations, the jury asked two questions related to the scope of employment instruction. First, it asked whether, in order to find Meteor liable, it had to find both that Durand was an employee of Meteor and that he was "acting within the scope of his employment at the time of the occurrence." The trial court responded, with the consent of all parties, that both elements needed to be proven to find Meteor liable under the claim for negligent supervision. Second, the jury asked whether it could assess punitive damages if it found that Durand was an employee but was not acting in the scope of employment at the time of the occurrence. The trial court again responded, with the consent of all parties, that the jury could not assess punitive damages against Meteor if they found that Durand was not acting in the scope of his employment at the time of the occurrence.

**{29}** After the jury returned its verdict, Meteor moved for judgment as a matter of law notwithstanding the verdict and for a new trial. In this motion, Meteor did not challenge either the scope of employment instruction or the employer liability jury instruction, but rather insisted that these jury instructions were "the law of the case," quoting *Payne v. Hall*, 2004-NMCA-113, ¶ 18, 136 N.M. 380, 98 P.3d 1030. Meteor capitalized on these instructions to urge the trial court to conclude that there was insufficient evidence to support the jury's verdict.

**{30}** It was not until the hearing on Meteor's motion for judgment as a matter of law that Meteor first contended that the scope of employment instruction should not have been given. Meteor argued that the scope of employment instruction mixed vicarious liability and direct liability for negligent hiring and "may have colored the whole jury deliberations." Meteor went on to argue that there was no evidence that Durand was in the scope of his employment at the time of the accident. The trial court replied that the argument was that "the scope of his employment was getting drunk and his employer letting him get drunk and then leaving and putting the public at risk." Meteor disagreed with the trial court's interpretation.

**{31}** The post-trial objection to the scope of employment instruction is not sufficient for Meteor to have preserved this error. *See Kelly v. La Cueva Ranch Co.*, 25 N.M. 674, 678, 187 P. 547, 548 (1920) ("It is not the function of a motion for a new trial to raise propositions not raised in the progress of the cause."). The time to object to the scope of employment instruction was at the time it was tendered, not in a post-trial motion. *See Williams v. Town of Silver City*, 84 N.M. 279, 281, 502 P.2d 304, 306 (Ct. App. 1972) (applying the principle that issues not raised until the judgment notwithstanding the verdict are "too late to be the subject of review"). Meteor cannot have it both ways. By requesting the scope of employment instruction and then insisting post-trial that it was the law of the case, Meteor endorsed the instruction. Meteor's post-trial argument that the scope of employment instruction should not have been given was simply too late.

**{32}** Therefore, because Meteor did not object to the instruction before it went to the jury, we agree with Gutierrez that the Court of Appeals had to have remanded the case for a new trial based on fundamental error. The fundamental error doctrine provides that a court may remand for a new trial where an error is so fundamental that it puts the jury's verdict into grave doubt. *See State v. Reyes*, 2002-NMSC-024, ¶¶ 41-42, 132 N.M. 576, 52 P.3d 948, *abrogated on other grounds by Allen v. LeMaster*, 2012-NMSC-001, ¶ 36, 267 P.3d 806. The fundamental error doctrine is codified in Rule 12-216(B)(2) of the Rules of Appellate Procedure, which provides: "This rule shall not preclude the appellate court from considering . . . in its discretion, questions involving . . . (2) fundamental error . . . ." There is nothing in the rule's text to indicate that this discretion is confined only to criminal cases.

**{33}** However, this Court has applied the doctrine in civil cases under the most extraordinary and limited circumstances. *See Rivera v. Am. Gen. Fin. Servs., Inc.*, 2011-NMSC-033, ¶¶ 19, 20, 150 N.M. 398, 259 P.3d 803; *Payne*, 2006-NMSC-029, ¶¶ 37-38. In *Payne*, a successive tortfeasor claim that was relatively new to New Mexico jurisprudence, the plaintiff argued on appeal that the jury was confused about what law to apply, based on instructions to which she had not objected at trial. 2006-NMSC-029, ¶¶ 8-9, 31. This Court agreed that the instructions at issue "were particularly likely to confuse the jury." *Id.* ¶ 35. We recognized that the plaintiff had in fact suggested some of the offending instructions, and noted that we usually do not "grant a new trial if the original error was the fault of the complaining party." *Id.* ¶ 37. However, because the case was unique in that at the time of the trial, there were no uniform jury instructions for successor tortfeasor cases, and there was very little case law on the subject, which was in flux, we remanded for a new

trial. *Id.* ¶ 38.

**{34}** Here, unlike in *Payne*, while no uniform jury instruction on negligent hiring existed at the time of trial, *see* UJI 13-1647 NMRA Use Note (adopted December 3, 2010), well-established case law laying out the elements of negligent hiring did exist. *See Valdez v. Warner*, 106 N.M. 305, 307-08, 742 P.2d 517, 519-20 (Ct. App. 1987) (describing the standard for negligent hiring); *see also Spencer v. Health Force, Inc.*, 2005-NMSC-002, ¶¶ 10, 22-24, 137 N.M. 64, 107 P.3d 504 (discussing causation in the negligent hiring context); *Pittard v. Four Seasons Motor Inn, Inc.*, 101 N.M. 723, 729, 688 P.2d 333, 339 (Ct. App. 1984) (recognizing that a showing of "scope of employment" is unnecessary under a negligent hiring theory). Because Meteor invited jury instruction error in the face of established case law on this issue, it would be improper to reward Meteor with a new trial based on these errors. Allowing a party "to invite error and to subsequently complain about that very error would subvert the orderly and equitable administration of justice." *State v. Collins*, 2007-NMCA-106, ¶ 27, 142 N.M. 419, 166 P.3d 480 (internal quotation marks and citation omitted).

**{35}** As a final note, even if it were error, we doubt that this error was fundamental, because a finding of "scope of employment" was consistent with a finding of causation under the negligent supervision theory. The trial court adopted this analysis below, finding that this jury instruction error was not fundamental, but rather harmless, because the "scope of employment" instruction could "be reconciled with all of the factual requirements" under the negligent supervision claim.

## III.   CONCLUSION.

**{36}** Because the Court of Appeals erred both in reversing the jury verdict under the Dram Shop Liability Act and in granting a new trial under Plaintiffs' negligent supervision claim, the Court of Appeals is reversed and this case is remanded to the Court of Appeals to consider the issue regarding punitive damages.

**{37}   IT IS SO ORDERED.**

_____

**EDWARD L. CHÁVEZ, Justice**

**WE CONCUR:**

_____

**CHARLES W. DANIELS, Chief Justice**

_____

**PATRICIO M. SERNA, Justice**

_____

**PETRA JIMENEZ MAES, Justice**


_____

**RICHARD C. BOSSON, Justice**


**Topic Index for *Estate of Gutierrez v. Meteor Monument*, No. 32,436**


**AE     APPEAL AND ERROR**
      AE-FE        Fundamental Error
      AE-HE       Harmless Error
      AE-IE        Invited Error
      AE-PA       Preservation of Issues for Appeal


**CP     CIVIL PROCEDURE**
      CP-MN     Motion for New Trial


**EL     EMPLOYMENT LAW**
      EL-SE       Scope of Employment


**EV     EVIDENCE**
      EV-CV      Circumstantial Evidence
      EV-SS      Substantial or Sufficient Evidence


**JI     JURY INSTRUCTIONS**
      JI-CI        Civil Jury Instructions


**NG     NEGLIGENCE**
      NG-NG     Negligence, General
      NG-NH     Negligent Hiring


**TR     TORTS**

      TR-NH      Negligent Hiring
      TR-TK      Tavernkeeper's and Social Host's Liability